**Billy Don Franklin BOULDEN, By and Through his parents, Matt Boulden and Susie Boulden, Petitioner,**

v.

**William C. HOLMAN, Warden, Kilby Prison, Respondent.**

**Civ. A. No. 2303–N.**

United States District Court
M. D. Alabama, N. D.

Aug. 23, 1966.

William B. Moore, Jr., Montgomery, Ala., court-appointed attorney for petitioner.

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for respondent.

## ORDER

JOHNSON, Chief Judge.

The petitioner, Billy Don Franklin Boulden, by order of this Court made and entered in this case on November 18, 1965, filed in forma pauperis his application for a writ of habeas corpus. The petitioner is represented by the Honorable William B. Moore, Jr., Attorney at Law, Montgomery, Alabama, who was appointed by this Court on November 18, 1965, to represent the petitioner in the proceeding and who has represented Boulden in a diligent and commendable manner.

Petitioner Boulden alleges that he is presently incarcerated by the State of Alabama at Kilby Prison, Montgomery, Alabama, in violation of his constitutional rights. His basic contention is that his constitutional rights were violated by the State of Alabama acting through the Circuit Court of Morgan County, Alabama, in state court case No. 5532 during the month of May 1964.[1] The petitioner is awaiting the execution of the sentence of death imposed by the Circuit Court of Morgan County, Alabama.

On the pretrial hearing of this cause, as reflected by the order of this Court made and entered herein on April 6, 1966, and after this Court had entered a formal order staying execution of the sentence until a plenary hearing could be conducted, it was stipulated and agreed that the issue to be inquired into and determined by this Court is whether the reception into evidence of admissions against interest and purported confessions obtained after Boulden's arrest by the State at a time when Boulden was not represented by counsel constituted a denial of his constitutional rights as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

Upon this submission, the Court makes the following findings:

On May 1, 1964, shortly after Lloyd C. Hays was killed, petitioner Boulden was arrested and taken into custody in the vicinity of the alleged crime. Boulden was then taken to the actual scene of the killing and retained there in an Alabama Highway patrol car in the presence of a number of hostile persons. There was no evidence, however, that the protection afforded Boulden on this occasion was inadequate. Thereafter, Boulden was taken to Athens, Limestone County, Alabama, where he was interrogated in the Limestone County Jail by Lt. E. B. Watts, Criminal Investigator, and Captain John Williams of the State Troopers, from approximately ten o'clock that night to twelve-thirty or one o'clock the next morning. At the beginning of the interrogation, Boulden was informed of his constitutional rights with the exception of his right to counsel. During the questioning, Boulden was given food, permitted to smoke, and permitted to use the toilet which adjoined the room where the interrogation took place. Boulden was not mistreated in any way, nor was he threatened or otherwise coerced. The interrogation ended when Boulden admitted that he killed Hays and had signed a written statement prepared by Lt. Watts to that effect. Boulden was then taken to Decatur, Alabama, for photographs and a physical examination. Afterwards, he was returned to a cell at the Limestone County Jail where he was allowed to sleep.

---

1. The four-count indictment charging petitioner Boulden with the first degree murder of Lloyd C. Hays was returned to the Circuit Court by the Grand Jury on May 7, 1964. The arraignment was held on May 7, 1964, the trial commenced on May 27, 1964, and the verdict of guilty was rendered by the jury on May 29, 1964. Petitioner was sentenced to death by electrocution. The conviction and sentence were affirmed by the Supreme Court of Alabama on September 30, 1965. Boulden v. State, 278 Ala. 437, 179 So.2d 20.

Later that morning (May 2, 1964), at approximately six o'clock, Boulden was brought before the Honorable James N. Bloodworth, one of the judges of the Circuit Court for Morgan County, Alabama, who fully and completely explained to Boulden the scope of his rights under the Constitution of the United States, including his right to counsel. Judge Bloodworth was unaware of Boulden's confession the night before. Boulden's parents—Matt and Susie Boulden—were present, and he was allowed to visit and consult with them. The early time for the hearing and Boulden's prior removal to Limestone County and subsequent removal to Kilby Prison in Montgomery, Alabama, were precautionary measures taken to insure Boulden's safety.

Boulden remained at Kilby Prison for several days, during which time he was treated well and allowed to see his parents, who informed him of their efforts —which were unsuccessful because of their indigency—to hire an attorney. On May 6, 1964, Lt. Watts, Captain Williams, and the Morgan County sheriff, took Boulden back to the scene of the crime. A circle of police had ringed the area in order to prevent intrusion from any onlookers and to insure Boulden's safety. Consistent with his confession in the early morning of May 2, 1964, Boulden re-enacted or demonstrated how he killed Hays. Boulden also signed a second written confession, again prepared by Lt. Watts. Boulden was not advised of his rights on this occasion, nor was he aware of a concealed wireless microphone on the person of Lt. Watts, which transmitted to a tape recorder located in a distant patrol car. There is no credible evidence of any coercion, threats, or attempt to procure from Boulden an admission or confession against his will; nor was he promised leniency at his trial or any other reward for any such statement. A portion of the tape recording and a transcription thereof were admitted into evidence at Boulden's trial over the objection of his counsel.

Upon consideration of the trial record and transcript filed with the Clerk of this Court on January 13, 1966, and received into evidence by stipulation of counsel, and upon consideration of the oral evidence taken upon this plenary hearing, this Court concludes that the written confessions made by Boulden on May 2, 1964 and on May 6, 1964, the latter having been admitted into evidence over defendant's objection at the trial of this case, did not violate Boulden's constitutional rights as guaranteed by either the Fifth, Sixth or Fourteenth Amendments to the Constitution of the United States.

As an initial observation, this Court wishes to emphasize that it is not called upon in this proceeding to pass on the guilt or innocence of Boulden of the crime for which he was convicted, nor is the Court required to determine the veracity of the confessions made by Boulden. Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). It should also be observed that the cases of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), are not to be applied retroactively. Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed. 2d 895 (June 20, 1966); Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (June 20, 1966). This Court notes that *Escobedo* affects only those cases in which the trial began after June 22, 1964, the date of that decision, and that *Miranda* applies only to cases in which the trial began after the date of that decision, which was June 13, 1966. The conviction in this case was obtained and trial completed before either the *Miranda* or *Escobedo* case was decided. The rulings in those cases are therefore inapplicable to the present proceeding. However, as the Supreme Court noted and emphasized in Davis v. State of North Carolina, supra, the review of voluntariness in cases in which the trial was held prior to *Esco-*

*bedo* and *Miranda* is not limited in any manner by those decisions.[2] As the Supreme Court noted in the *Davis* case:

> As we pointed out in *Johnson,* however, the nonretroactivity of the decision in *Miranda* does not affect the duty of courts to consider claims that a statement was taken in circumstances which violate the standards of voluntariness which had begun to evolve long prior to our decisions in *Miranda* and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) \* \* \* The standard of voluntariness which has evolved in state cases under the Due Process Clause of the Fourteenth Amendment is the same general standard which applied in federal prosecutions—a standard grounded in the policies of the privilege against self-incrimination. Malloy v. Hogan, 378 U.S. 1, 6–8, 84 S.Ct. 1489, 1492–1493, 12 L.Ed.2d 653 (1964).

Thus, the sole issue which remains for consideration is whether the confessions were voluntarily given by Boulden.

■■ Petitioner relies, in part, on the case of Davis v. State of North Carolina, supra, the most recent of the Supreme Court's pronouncements in the area of coerced confessions. In *Davis,* the defendant, a Negro with no more than a fourth-grade education, was held by the police for a period of 16 days, during which State authorities were the only persons who saw him; he was questioned constantly in an atmosphere which the Court found to be generally "coercive," and was led on a 14-mile trek to the scene of the crime, the avowed purpose of which was "to break down his [defendant's] alibis to the crime of murder." These facts are in sharp contrast to those in the present case. As stated previously, on May 1, 1964, petitioner Boulden was interrogated only briefly, prior to which he was informed that he had a right to remain silent and that any statement which he might make could be used against him. The investigating officers were courteous,. and Boulden was allowed to eat, to smoke, and to use toilet facilities when he desired—conditions which scarcely compare with those in *Davis*. Although it is true that Boulden was not on this occasion informed of his right to counsel, "a failure to warn accused persons of their rights, or the failure to give them outside assistance" is but one of many factors to be considered upon the question of voluntariness[3] and does not of itself render defective an otherwise valid confession. See Crooker v. State of California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed. 1448 (1958); Taylor v. Holman, D.C., 257 F.Supp. 918 (August 15, 1966). Accordingly, this Court concludes that the State did not transgress the prevailing standards safeguarding Boulden's right to remain silent in procuring this first confession in the early morning of May 2, 1964. Nor were those standards violated when the second confession was obtained on May 6, 1964. By this time Boulden had been fully apprised of his constitutional rights, including his right tò counsel, although there was no request for counsel until May 7, 1964, at which time—and before arraignment—counsel was immediately appointed. Once again, the atmosphere was not sufficiently hostile or coercive to such an extent that this Court can conclude that Boulden's will was overborne. This confession, like the first, simply was not coerced.

Counsel for petitioner also relies on the testimony of Boulden's high school principal, I. F. Stallworth, and a clinical psychologist, Dr. Ronald Hamby. Principal Stallworth testified that Boulden was below average in school and that his grade level was between grades five and six at the time of, or shortly before, the

---

2. See also Wainwright v. Padgett (5th Cir., July 8, 1966), 363 F.2d 822; Lyles v. Beto (5th Cir., July 13, 1966), 363 F.2d 503; Gamble v. Beto (5th Cir., July 14, 1966), 363 F.2d 831; Marion v. Harrist (5th Cir., July 18, 1966), 363 F.2d 139, and State ex rel. Holman v. Washington (5th Cir., August 1966), 364 F.2d 618.

3. Johnson et al. v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772 (June 20, 1966); Marion v. Harrist (5th Cir., July 18, 1966), 363 F.2d 139.

killing. This testimony is in part discounted by the fact that Boulden was continually absent from class, and the somewhat contradictory statement of the principal that Boulden had the ability of an average student. The essence of Dr. Hamby's testimony was that Boulden had a "dull-normal" intelligence quotient (83), and that he was more inclined than ordinary individuals to follow almost any suggestion from one in authority if he thought it would help him extricate himself from a situation of stress. This Court, however, is not satisfied that this condition (which is by no means uncommon) would lead an individual to confess to an obviously serious offense, rather than try to fabricate an excuse or alibi. Even assuming, however, that Boulden was, to a certain extent, susceptible to coercion, the circumstances surrounding both confessions do not reflect that such coercion existed, or that his will was in fact overpowered, or that his confessions were other than voluntarily made. It must, therefore, be concluded that Boulden's confessions, which were, in part, evidence at his trial, were free from constitutional defect.[4]

In consideration of the foregoing, it is the order, judgment and decree of this Court that the petition for a writ of habeas corpus, filed herein by leave of this Court in forma pauperis by petitioner Boulden, be and the same is hereby denied. It is further ordered that petitioner Boulden's application for a writ of habeas corpus be and the same is hereby dismissed.

It is the further order, judgment and decree of this Court that the petitioner, Billy Don Franklin Boulden, be and he is hereby remanded to the custody of the State of Alabama.

4. While a Court upon a habeas corpus proceeding such as this one is not concerned with guilt or innocence, Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, and while this Court fully recognizes that had either of the confessions been illegally—in a constitutional sense—obtained and then offered and admitted into evidence upon the trial, any subsequent conduct on the part of the defendant—even to the

point of testifying and admitting the crime—would not cure the constitutional defect, Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, it is interesting to note that Boulden took the witness stand during the trial of this case in the State Circuit Court and testified to almost exactly the same facts to which he had confessed.