231 So.2d 737

Robert SWAIN

v.

STATE.

7 Div. 796.

Supreme Court of Alabama.

Feb. 5, 1970.

Rehearing Denied March 5, 1970.

Norman C. Amaker, New York City, Peter A. Hall, Orzell Billingsley, Jr., Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and
Leslie Hall, Asst. Atty. Gen., for the State.

HARWOOD, Justice.

This is an appeal from a judgment of the Circuit Court of Talladega County, Alabama, denying appellant relief in a coram nobis proceedings.

The appellant was adjudged guilty of raping a 17 year old girl in Tallageda County in 1962, and sentenced to death.

This court affirmed the judgment. See Swain v. State, 275 Ala. 508, 156 So.2d 368. A thumbnail sketch of the facts as produced by the state in the rape trial tended to show that Swain came to the victim's home and requested admission to use a telephone, first inquiring if a man was there. The victim was alone except for her four month old sister whom she was tending. Appellant's request was refused, though the victim tried to call a telephone number for appellant but found this number not in service.

When she went back to tell the appellant to leave, he forced his way into the house. After strenuous efforts of the victim to resist and to escape, and physical abuse and blows administered to her, as well as threats to kill her baby sister, the appellant dragged her into a bedroom where he ravished her.

After affirmance of the judgment by this court, the Supreme Court of the United States reviewed the same on certiorari and on 8 March 1965, affirmed with a full opinion. See Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759.

On 25 June 1965, the appellant filed in this court a petition for leave to file corum nobis proceedings in the Circuit Court of Talladega County which petition was denied on that same day. (Minute Book 303, p. 116, 7 Div. 699.)

Thereafter the sentence of execution of appellant was stayed by a Justice of the Supreme Court of the United States pending review of the order denying the petition for leave to file coram nobis. On 6 December 1965, the United States Supreme Court denied appellant's petition for a writ of certiorari. Swain v. Alabama, 382 U.S. 944, 86 S.Ct. 399, 15 L.Ed.2d 353.

On this same day this court adopted Revised Rule 50 providing that petitions for writs of error coram nobis shall be filed in the trial court without first applying to this court for permission to do so. (See Revised Rule 50, 279 Ala. p. XLIII.)

Thereafter, the appellant filed the present petition for a writ of error coram nobis in the Circuit Court of Talladega County, and this court stayed the execu-

tion of appellant pending the final disposition of the coram nobis proceedings.

After a hearing lasting over seven days, the Circuit Court denied appellant's petition for a writ of error coram nobis and this appeal is from that order and judgment.

The petition sets forth some nine grounds which appellant alleges constituted a denial to him of due process and equal protection of law as guaranteed him by the Fourteenth Amendment of the United States Constitution. These grounds as set forth in the petition are:

A. A systematic and arbitrary exclusion of negroes from service on petit juries of the Circuit Court of Talladega County, or a token inclusion which amounted to racial discrimination.

B. That the circuit solicitor (now district attorney) for a period of twelve years preceding appellant's trial consistently and systematically struck negroes from petit jury venires, or entered into agreements with defense counsel to eliminate all negroes from the venires, thus preventing negroes from serving on petit juries because of their race, and not for reasons related to the trial of a particular case.

C. That appellant is a negro charged with the rape of a white woman, and the State of Alabama and its instrumentalities, including juries, officers, and agents, through policy and custom and usage discriminatorily impose the death penalty against negroes charged with raping white women, but do not impose such penalty against white men charged with rape in similar circumstances.

D. That petitioner's (appellant's) sentence of death was determined by a jury which pursuant to Sec. 395, Tit. 14, Code of Alabama 1940, had unlimited, undirected, and unreviewable discretion in choice of sentence.

E. That the jury's verdict simultaneously determining appellant's guilt and sentence was pursuant to Sec. 395, Tit. 14, Code of Alabama 1940, which code section does not establish any procedure allowing a separate consideration of guilt and of sentence.

F. That appellant was sentenced to death without consideration of mitigating or aggravating circumstances, pursuant to Sec. 395, Tit. 14, Code of Alabama 1940, which statute on its face and as applied prescribes cruel and unusual punishment.

G. That on the day he was apprehended by law enforcement officials the appellant was not informed of his right to remain silent, nor was he informed of his right to counsel, nor was he provided with counsel that he might be informed of his rights, but on the other hand appellant was required against his will to remove his clothing and subject himself to have his picture taken in the nude, and to the combing of his pubic hair by the state toxicologist, and was forced to surrender his clothing to the state toxicologist, all of which resulted in the offer and admission of incriminating evidence at his trial.

H. That the solicitor (district attorney) during his argument to the jury aroused racial prejudice and inflamed the minds of the jurors.

I. That appellant was indicted, tried, and convicted by juries from which women were excluded pursuant to Sec. 21, Tit. 30, Code of Alabama 1940, which statute makes women ineligible for jury service.

Around November 14th or 15th, 1966, Jackie Fields, a "legal intern" then employed by the Legal Defense and Educational Fund of the NAACP came to Talladega County and examined the court files of criminal cases from 1950 through 1962. She employed two assistants to work with her in this undertaking. From what is sometimes referred to as the "case file," and at other times as the "shuck," a venire list of jurors serving

in the particular case was prepared, which also showed the "strike" list of jurors actually serving on the jury trying the case. This showed the jurors stricken by the state or by the defendant as the case might be. From the lists of 1950 through 1955, she was able to determine that negroes were on some of the venires since the designation "col" appeared after their names. From August 1955 through 1962 the abbreviation "col" did not appear after any name on the venire. However, these lists were shown to negroes who had lived in Talladega County over a long number of years, and who testified to their wide acquaintance with members of the negro race in Talladega County, for the purpose of determining the negroes on such lists.

From this information, and examination of the dockets of the court, the case files, or "shucks" and other records, data sheets or forms were prepared by the legal intern and the assistants working under her supervision which appellant asserts in brief contain "the hard factual data as to the number of Negroes appearing on the Talladega County jury venires from 1950 through 1962."

The court sustained the state's objection to the reception of these forms in evidence.

The court also sustained the state's objection to the questions propounded to Dr. John S. de Cani, a statistician, as to his statistical analysis of the data compiled by the legal intern and her assistants. The grounds of the state's objection were that the data on which Dr. de Cani had made his statistical analysis had furnished no reliable basis for such analysis.

In addition to technical grounds for refusing to admit this evidence, the court below was of the opinion that the evidence offered through the legal intern related to matters previously determined adversely to the appellant in his former trial, the judgment in such case having been affirmed by this court and the Supreme Court of the United States.

It is well established under our decisions that a writ of error coram nobis does not lie to permit a petitioner to review an alleged error where the error allegedly grows out of matters already litigated and adjudicated on their merits. Seals v. State, 271 Ala. 622, 126 So.2d 474; Ex parte Ellis, 41 Ala.App. 253, 128 So.2d 108; Ex parte Rudolph, 276 Ala. 392, 162 So.2d 486; Aldridge v. State, 278 Ala. 470, 179 So.2d 51.

The questions now sought to be raised in Ground A of the petition were fully litigated in the trial. On appeal, these same matters were carefully considered and elaborately discussed in the opinions of this court and of the United States Supreme Court, and the questions raised were determined adversely to the contentions of the appellant.

It is to be noted that in the "Standards Relating to Post-Conviction Review" promulgated by the American Bar Association Project on the Minimum Standards for Criminal Justice, it is provided in Part VI, Finality of Judgments:

"6.1(a) Unless otherwise required in the interest of justice, any grounds for post-conviction relief as set forth in Section 2.1 which have been fully and finally litigated in the proceedings leading to the judgment of conviction should not be re-litigated in post-conviction proceedings.

\*      \*      \*      \*      \*      \*

"(ii) A question has been fully and finally litigated when the highest court of the state to which a defendant can appeal as of right has ruled on the merits of the question."

See also Section 8 of the Second Revised Uniform Post-Conviction Procedure Act, promulgated by National Conference of Commissioners on Uniform State Laws in 1966, and approved by the Ameri-

can Bar Association House of Delegates that same year.

This Section 8 is basically in accord with the American Bar Association's standards as to matters "finally litigated."

█ It was not until November 1966, that the investigation was undertaken, some nine months after the affirmance of the judgment by the United States Supreme Court, in an effort to produce evidence tending to dispute evidence produced in the trial relative to the exclusion of negroes from the juries in Talladega County.

This was too late. The matter had already been fully and finally litigated. The court properly rejected the data produced by the legal intern, and the statistical study made thereon.

Otherwise, after every criminal judgment, even though fully and finally litigated as to the points sought to be raised in a post-conviction proceedings, additional data and statistics could be presented ad infinitum. The doctrines of res adjudicata and finality of judgments could thus be destroyed in criminal cases, and the functioning of criminal laws be mocked.

█ What we have written above as to full litigation, consideration and finality of points sought to be raised in the present coram nobis proceeding equally applies to the matters sought to be raised in Grounds B, G, and H. These matters were fully considered on appeal by this court, or the Supreme Court of the United States on certiorari, or by both courts and decided adversely to the contentions of the appellant.

Grounds D and E of the petition may well be considered jointly.

Section 395, Title 14, Code of Alabama 1940, provides that any person convicted of rape shall, at the discretion of the jury, be punished by death or imprisonment in the penitentiary for not less than ten years.

It is the contention of counsel for appellant that permitting the same jury to adjudicate guilt and impose sentence is violative of due process of law in that no standards for meting out punishment are fixed, and the convict has no opportunity to offer evidence tending to mitigate the punishment to be imposed.

In Spencer v. Texas, 385 U.S. 553, 87 S.Ct. 648, 17 L.Ed.2d 606, is found the following statement:

"* * * Two part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure * * *"

█ There can be no argument but that a state can impose the death penalty for heinous crimes. In some jurisdictions the imposition of punishment is left to the trial judge, in other jurisdictions the punishment to be fixed is for the jury. As to those jurisdictions permitting the jury to impose the penalty of the law, the court in Maxwell v. Bishop, 8 Cir., 398 F.2d 138, wrote:

"* * * Their choice between capital punishment and life imprisonment, * * is not startlingly or shockingly different from the situation where choice of punishment within statutorily prescribed limits is for the judge. See Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)."

The United States District Court which denied habeas corpus to Maxwell in 257 F.Supp. 710 (1966) stated in its opinion, in part, as follows:

"* * * If a State can constitutionally impose the death penalty for a crime, this Court sees no constitutional objection to permitting a jury rather than a trial judge to decide whether that penalty shall be imposed in a particular case."

█ As to lack of specific standards for inflicting punishment in those jurisdictions following a single jury procedure, i. e., determination of guilt and imposition of

punishment, we are in accord with the views of Henley, Chief Judge, expressed in the habeas corpus proceedings when Maxwell v. Bishop, supra, was before the United States District Court, Eastern Division of Arkansas:

"  *  *  * Whether a convicted rapist or murderer is to suffer death, on the one hand, or life imprisonment, on the other, rests under Arkansas procedure, within the discretion of the jury, to be exercised in the light of the judgment, common sense, and experience of the jurors. Jurors are presumed to be persons of good judgment and common sense."

Counsel for appellant in their argument in support of Grounds C and D, place much reliance upon Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447. We consider the pronouncement in said case inapplicable to the present question. In fact, footnote 8 of the opinion states:

"In so holding we intend to cast no doubt whatever on the constitutionality of the settled practice of many States to leave to juries finding defendants guilty of a crime the power to fix punishment within legally prescribed limits."

As to Grounds C and D, it is appellant's contention that because a survey and statistical study made of selected counties in twelve southern states revealed that the death sentence was imposed on negroes convicted of raping white women in far larger proportion than in those cases where white men were convicted of raping white women, such studies should now be injected into this case to compel the conclusion that the appellant was deprived of due process of law in the sentence imposed upon him.

The counties were selected under a formula approved by John Monroe, a sampling and survey statistician, and the studies were made largely by law students in the selected counties by filling out lengthy forms prepared by Dr. Marvin Wolfgang, a criminologist and sociologist of the University of Pennsylvania.

The depositions of Mr. Monroe and Dr. Wolfgang were received in evidence.

Seventeen Alabama counties, including Talladega County were included in these surveys.

This same type of evidence, similar if not identical, was made the basis of the same type of contention in Maxwell v. Bishop, 398 F.2d 138, supra. The Circuit Court of Appeals, as well as the District Court when the case was heard there, found such evidence insufficient in probative value to justify setting aside the judgment of conviction and death sentence rendered in the Arkansas court in a prosecution for rape of a white woman by a negro.

We quote the following significant passages from the opinion of the Circuit Court of Appeals' opinion, 398 F.2d 138, supra:

"It is perhaps well to emphasize initially what the study and Dr. Wolfgang's testimony do not do or purport to do:

"1. They do not relate specifically to Garland County where this particular offense was committed and where Maxwell was tried and convicted. They are concerned with 19 other Arkansas counties and with counties in 11 other states.

"2. They admittedly do not take every variable into account.

"3. They do not show that the petit jury which tried and convicted Maxwell acted in his case with racial discrimination.

"4. They do not deny that generally the burden of demonstrating discrimination in penalty imposition is on the one who asserts it. Maxwell v. Stephens, supra, p. 330 of 348 F.2d [325] and cases cited; Mitchell v. Stephens, 353 F.2d 129, 133 (8 Cir. 1965), cert. denied 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042.

"What we are concerned with here is Maxwell's case and only Maxwell's case.

\*　　\*　　\*　　\*　　\*　　\*

"We are not yet ready to condemn and upset the result reached in every case of a negro rape defendant in the State of Arkansas on the basis of broad theories of social and statistical injustice."

 Ground F of the petition, and appellant's arguments thereunder, is based upon the contention that a death sentence is a cruel and unusual punishment. As of now the settled law is contrary to this contention. Boykin v. State, 281 Ala. 659, 207 So.2d 412, reversed by United States Supreme Court on other grounds on 2 June 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274; Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793; Note 4 in State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422. ·

 Ground I of the petition relating to absence of women on grand jury, and the petit jury indicating and convicting appellant is without merit.

While in White v. Crook, D.C., 251 F. Supp. 401, a three judge court held in 1966 that the Alabama Statute denying women the right to serve on juries violated the Fourteenth Amendment of the United States Constitution, the effective date of the judgment in this aspect was delayed until 1 June 1967, in view of a meeting of the Alabama Legislature scheduled for January 1967, and the court specifically declared that its conclusion as to the unconstitutionality of the Alabama law barring women on juries should not be retroactive in effect. The judgment in the present case was pronounced in 1962, long prior to White v. Crook, supra.

 Although not made a ground in the petition filed in this case, counsel for appellant also argues in brief that the death sentence in this case should be set aside because of the doctrine enunciated in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. This doctrine deals with excluding jurymen for cause because of their general objections to the imposition of the death penalty.

The record before us in this proceedings fails to show that any jurors on the venire were challenged for cause on account of a fixed opinion against capital punishment, nor did the original record in the trial. We consider this argument without merit.

The judgment here reviewed is due to be affirmed, and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL,· and MADDOX, JJ., concur.