251 So.2d 601

James **LIDDELL, Jr.**

v.

**STATE.**

**7 Div. 693.**

Supreme Court of Alabama.

March 4, 1971.

Reversed after Remandment Aug. 5, 1971.

Oscar W. Adams, Jr., U. W. Clemon, Demetrius C. Newton, Birmingham, Jack Greenberg, Norman C. Amaker, New York City, for appellant.

MacDonald Gallion, Atty. Gen. and David W. Clark, Asst. Atty. Gen., for the State.

HARWOOD, Justice.

This appeal is from a verdict and judgment finding the appellant, James Liddell, Jr., guilty of rape. Punishment was fixed at death.

The evidence introduced by the state tends to show that on the night of 26 August 1964, at about 10:45 P.M., the prosecutrix and her date for the evening were sitting in her date's automobile in a parking area immediately off of a public highway which runs down Lookout Mountain toward Gadsden in Etowah County. After the couple had been thus parked for about a half hour, someone came to the window on her date's side of the automobile, placed a hand on his shoulder, and with a pistol in his other hand, ordered the date out of the automobile. As the date left the automobile he was struck on the jaw and then dragged down the mountain for a distance. Here he was detained at

gun point by one or more men in relays until the men left some thirty minutes later.

The prosecutrix was pulled out of the automobile and dragged down the mountain in a different direction by another of the men. While resisting, she tripped her assailant and both fell to the bottom of an embankment. This area was heavily wooded.

There the man who had forced her to this area sexually assaulted her, a second man helping to hold her during this assault. This second man then assaulted the prosecutrix sexually, to be followed by another sexual assault by the first man.

A third man appeared and he also sexually assaulted the prosecutrix. The men then left the area. This third man was subsequently identified by the prosecutrix as being James Liddell, Jr., the appellant here.

After her attackers departed the prosecutrix made her way up the mountain to the home of Mr. and Mrs. Jack Wheeler. She arrived at the Wheeler home in a highly emotional state, begging for help. Her hair was mussed up, and dirt was on her dress, arms, body, and in her hair. After hearing her complaint, the Wheelers called the police, and the parents of the prosecutrix.

That same night she was taken to a hospital in Gadsden. The physician who examined her there found lacerations on the floor and both sides of her vagina. A specimen of fluid having the appearance of semen was removed from the vagina. Subsequent miscroscopic examination of this fluid revealed multiple spermatozoa of different sizes and shapes indicating ejaculation by at least two different men.

Several days later the appellant was identified by the prosecutrix as one of her assailants, he being included in the last of five or six lineups viewed by the prosecutrix. In her testimony at the trial below, the prosecutrix testified she recognized the appellant from seeing him at the time of the attack, there being moonlight and some light from automobiles passing on the highway.

The evidence presented by the appellant sought to establish an alibi, such testimony being directed toward showing that the appellant was elsewhere than at the scene of the attacks at the time they occurred.

This is a companion case to Butler v. State, 285 Ala. 387, 232 So.2d 631, in that Butler was the second man alleged to have raped the prosecutrix on the occasion in question. The facts shown in the *Butler* case, supra, are in all material aspects virtually the same as those produced in the trial of this appellant. Further, many of the points raised in this appeal are the same as those presented and considered in *Butler*, supra.

■ In the present case as in *Butler*, supra, a motion was made to quash the indictment on the ground that negroes were systematically excluded from the Grand Jury returning the indictment against him. The motion further avers that a motion to quash a previous indictment against the appellant on the same ground, i. e., systematic exclusion of negroes, was granted, and that the Jury Commission of Etowah County was ordered to make up a jury roll; that the Jury Commission "purportedly" made up a new jury roll and the Grand Jury which returned the present indictment was drawn from such jury roll. The motion avers that at the time the second Grand Jury returned the present indictment, the white population of Etowah County twenty-one years of age or over according to the 1960 Federal Census report constituted 84.6 of the population of Etowah County, and the negro male population in said age group constituted 15.4 percent, and that the jury rolls of Etowah County contain less than 5 percent of the negro males eligible for jury duty.

It is to be noted that the motion does not aver what percent of eligible white

population is on the jury roll. It therefore furnishes no basis for concluding that there was any discrimination on a racial basis.

As in *Butler*, supra, we find no evidence submitted at the hearings on the motion for a new trial tending in anywise to support this ground of the motion for a new trial. The burden cast upon an appellant to establish discriminatory exclusion because of race, and the governing legal principles relating to racial composition of juries as required constitutionally are fully set forth in *Butler*, supra. Therein we held that the appellant had failed to establish racial discrimination in the composition of the jury roll returning the indictment. We likewise so hold in this case.

Another ground of the motion for a new trial asserts that negroes were systematically *included* on the jury roll from which the Grand Jury was drawn that returned the present indictment. Again, no evidence whatsoever was offered in support of this ground. No error therefore resulted in denial of the motion for a new trial on this ground.

A further ground of the motion for a new trial asserted that at the time this indictment was returned women were excluded from the jury rolls of Etowah County from which the Grand and Petit Juries were drawn. This question was decided adversely to appellant's contentions in *Butler*, supra, with a full recitation and discussion for our conclusion. We adhere to the views expressed in *Butler*, supra, on this point and hold this point to be without merit.

Another ground of the motion for a new trial asserts that the sentence of death for rape is an unconstitutional sentence in that it amounts to a cruel and unusual punishment. This same point was advanced in *Butler*, supra, and decided adversely to the appellant's contentions. We adhere to this conclusion and hold this contention to be without merit.

Counsel for appellant also contends that the lower court erred in denying appellant's motion for a continuance timely made in the court below. The ground asserted in the motion as a basis for the continuance was that publicity attending certain demonstrations and occurrences in Selma had so inflamed the minds of many white citizens in Alabama, some of whom might be on the jury trying the appellant, that he could not obtain a fair and impartial trial.

Appellant had the burden of showing the trial court that an impartial trial and an unbiased verdict could not be reasonably expected in Etowah County. Nickerson v. State, 283 Ala. 387, 217 So.2d 536; Bosarge v. State, 273 Ala. 329, 139 So.2d 302.

We do not find in the record any evidence offered in support of the motion for a continuance. In this state of the record nothing is presented on this question for our review. The same type of motion for a continuance was made and denied in *Butler*, supra, and the denial was made a basis of asserted error, on the appeal in that case. We see no need for further elaboration of the views set forth in *Butler*, supra, which compelled the conclusion that no error infected the ruling. Likewise no error infected the ruling on the motion for a continuance in this case.

It appears from extended colloquy between counsel for the appellant, the court, and counsel for the state, occurring during one of the hearings on the motion for a new trial that counsel for appellant had requested the issuance of a subpoena duces tecum to the clerk of every circuit court in Alabama, seeking to have the clerks appear in the Circuit Court of Etowah County, and bring with them the court records of their respective counties or circuits in those trials wherein the death penalty had been imposed. These subpoenas are not included in the record before us, but we gather from the colloquy of counsel that the records sought were of trials had since 1927, or 1930, each year being mentioned.

The state filed a motion to quash the issuance of the said subpoena duces tecum and this motion was granted except as to Etowah County. It was the court's view that the records of counties other than Etowah County were irrelevant and immaterial on the question of whether there was a pattern of discrimination in the imposition of the death penalty against negroes as contrasted with whites in Etowah County.

■ Counsel for appellant now argue that by this ruling the appellant was deprived of a right to discover evidence tending to prove his claim of discrimination in the imposition of the death penalty as between whites and negroes.

We are in full accord with the court's view that the evidence sought by the subpoena duces tecum to every circuit clerk would be immaterial, and irrelevant and therefore inadmissible. The question before the court was the existence of bias only in Etowah County.

The court did not quash the subpoena duces tecum to the Clerk of the Circuit Court of Etowah County. We do not find in the record, however, that any records of the Circuit Court of Etowah County pertaining to the imposition of death penalties by juries in that county were offered in the proceedings below.

Had such records been offered, their relevance in a particular case would be highly suspect. The brutality with which a crime is committed, and numerous other factors enter into the imposition of punishment in each individual case.

Further, Section 3, Title 7, Code of Alabama 1940, provides:

"No records or papers of any court must be removed out of the county, except in cases of invasion or insurrection, whereby the same may be endangered, or unless by order of the court, or except further that any noncurrent records may be deposited in the department of archives and history at the discretion of the judge or clerk of said court."

Clearly this section means that the records of a court can be removed from a county only upon the order of a court having control and custody of the records.

After verdict and judgment below, the appellant filed a "Motion for Reduction of Sentence."

The grounds for such motion were:

1. The judgment and sentence violated the Fourteenth Amendment of the United States Constitution in that the appellant, a negro, charged with the rape of a white woman, was the victim of a pattern of a discrimination in that the death sentence in rape cases was imposed almost exclusively upon negroes charged with the rape of a white woman.

2. That Section 39, Title 14, Code of Alabama 1940, authorizing the death penalty for rape is on its face, and as applied, violative of the Eighth (Cruel and Unusual Punishment) and Fourteenth Amendments (Due Process) of the United States Constitution.

3. The appellant was deprived of due process of law in that the jury's verdict simultaneously determined the defendant's guilt and fixed the punishment at death, pursuant to Section 395, Title 14, Code of Alabama 1940, which Section does not establish any procedure allowing separate consideration of guilt and punishment, and the jury's assessment of punishment under such procedure as provided in Section 395, is undirected and unreviewable.

■ In support of Grounds 1 and 2 of the motion, counsel for appellant offered in evidence a survey and a statistical study made of selected counties in twelve southern states including Alabama. Some seventeen counties scattered throughout the length of Alabama, including Etowah County, were selected by John Monroe, a sampling and survey statistician, and the studies were

made in such selected counties by students completing lengthy forms prepared by Dr. Marvin Wolfgang, a criminologist and sociologist of the University of Pennsylvania.

The depositions of Mr. Monroe and Dr. Wolfgang pertaining to their study and conclusions were offered in evidence, at which time the court stated that the offers would be noted.

Appellant contends that these surveys as a whole show that Alabama juries practice racial discrimination in favor of whites and against negroes in the imposition of death sentences for the crime of rape.

This same issue, supported by the same survey evidence, was raised in Swain v. State, 285 Ala. 292, 231 So.2d 737, and in *Butler*, supra. After a careful study and a full discussion, particularly in *Swain*, supra, this issue was decided adversely to appellant's contentions. We adhere to the conclusions reached on these contentions in *Swain*, supra, and *Butler*, supra.

Additionally, under Amendment 38, Alabama Constitution of 1901, only the Governor has the power to grant reprieves and commutations to persons under sentence of death, and under Section 395, Title 14, Code of Alabama 1940, punishment of one convicted of rape is fixed, in the discretion of the jury, at death or imprisonment in the penitentiary for not less than ten years. Under Alabama constitutional and statutory provisions, therefore, a court has no power to fix the punishment of one convicted of rape, nor to commute a death sentence imposed by a jury. Such matters are solely within the province of the jury or the Governor.

Ground 3 of the motion to reduce the sentence would necessitate a bifurcated jury trial, the jury first determining the guilt of the accused, and thereafter upon a second hearing, assessing punishment.

Although several states have provided by statute for a guilt phase and penalty phase procedure in criminal trials, the United States Supreme Court has heretofore rejected attacks upon the single jury system which permits a jury to determine the guilt and assess punishment in one procedure.

In Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1966), that court wrote:

"Two part jury trials are rare in our jurisprudence; they have never been compelled by this court as a matter of Constitutional law, or even as a matter of federal procedure."

We hold that the court below properly denied the appellant's motion for reduction of sentence. To the same effect see *Swain*, supra, and *Butler*, supra.

The lower court did not err in denying appellant's motion for a reduction of sentence.

The trial of this case began on 17 May, 1965, and verdict and judgment was rendered and pronounced on 20 May 1965.

A motion for a new trial was duly filed. This motion was continued innumerable times, and finally overruled and denied on 14 July 1967.

Thereafter great difficulty was encountered in having the court reporter prepare and file a transcript of the evidence. In fact some 31 extensions of time of thirty days each were granted for the reporter to file the transcript of the evidence, which was finally filed in the Circuit Court of Etowah County on 26 January 1970. Even then no report of the voir dire examination of the qualifications of the jurors appeared in the transcript, and an additional thirty day extension was granted to correct this defect.

In lieu of a transcript of the voir dire examination of the jurors, the reporter prepared an affidavit which sets forth that during the trial below he "recorded on a standard Audograph (brand name) recording machine all the proceedings and qualifying questions asked of the jury panel, but did not take those qualifying questions down on my Stenograph shorthand machine.

\*    \*    \*    \*    \*    \*

"Having no Stenograph machine shorthand notes of this particular part of the trial, I took out the original Audograph records and sought to prepared (sic) an additional transcript touching on the jurors answers to a question asked of each of them concerning their belief in capital punishment for the crime charged. The voices of the attorneys, both for the State of Alabama and for the defendant, are quite clear and can be understood; however, the replies from the jury panel seated all over the court room, being some distance away from the recording equipment, are not clear and distinct. For this reason I was not and am not able to prepare and certify to a transcript of that portion of the trial.

\* \* \* \* \* \*

"I am enclosing herewith the original Audograph records recorded at the time in an envelope marked as 'Exhibit A,' which records are the complete recordings made on May 17, 1965, relative to the foregoing mentioned qualifying questions. These records may be played on a standard Audograph (brand name) recording machine and the questions asked and some of the answers given may be ascertained therefrom."

This affidavit together with the records was forwarded to the Clerk of the Circuit Court of Etowah County with the request by the attorneys for the appellant that the same be forwarded to this court as a part of the record. This request was complied with by the Circuit Clerk.

The transcript of the full record was filed in this court, and the case was submitted on oral argument on 12 January 1971.

We have played these records on a standard Audograph machine.

It is true that as to questions asked by the attorneys in examining the jurors, the jurors' answers are largely inaudible.

However, while the court was examining the panel of jurors by groups pertaining to their statutory qualifications, both the questions by the court and the jurors' answers are in most instances quite clear and audible. During the court's qualification of the jurors, he addressed to each group the question, "Do you believe in capital punishment?" Two jurors in each group replied, "No." These four jurors were Henry R. Johnson, Herman Williams, Carl Wright, and James S. Neal. Each of said jurors was challenged upon giving such negative reply.

At the conclusion of the qualifying questions by the court, the names of the four above named jurors were called by the court, and they were again challenged. These jurors were thereupon excused by the court.

While the identity of the person interposing the challenges is not disclosed by listening to the record, we must assume, in the background of the trial, that such challenges were interposed by the prosecution.

Ex parte affidavits cannot be made a part of a record on appeal. Ragsdale v. State, 134 Ala. 24, 32 So. 674; Lewis v. State, 42 Ala.App. 166, 157 So.2d 38. We are not, however, here considering an ex parte affidavit, but an Audograph record of the proceedings made during the examination of jurors looking toward their qualifications, which record was made by the official court reporter in lieu of a shorthand recording of the same.

These Audograph records were forwarded to the Clerk of the Circuit Court of Etowah County and sent to this court with the record of the trial below. They are before us as a part of such record. While the court reporter in his affidavit asserts that the records are inaudible, a playing of the same proves that they are clear and audible in those portions relating to the examination of the jurors as to whether they "believed" in capital punishment. Four of the jurors having answered they did not believe in capital punishment, they were challenged and excused upon such challenges. These facts place this case squarely within the influence of Witherspoon v.

Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 and Boulden v. Holman, Warden, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433.

The doctrine of *Witherspoon* and *Boulden*, supra, is to the effect that a simple negative answer to a general question addressed to a prospective juror, as to any "conscientious scruples" or "opposition" or "fixed opinion" against capital punishment, is insufficient to excuse such juror upon a challenge because of such belief, opposition, or fixed opinion. Such venireman must be further examined to sufficiently show that he would automatically vote against the imposition of the death penalty no matter what the evidence introduced at the trial might reveal. Otherwise it cannot be assumed such would be his position.

The court in the course of its opinion in *Witherspoon,* supra, enunciated its conclusion in unmistakable language as follows:

"We hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected."

Further, in *Witherspoon,* supra, the court made it clear, in footnote 22 to the opinion, that the doctrine was to apply retroactively.

In *Boulden,* supra, after affirmance of the judgment of guilty and sentence of death by this court, (see Boulden v. State, 278 Ala. 437, 179 So.2d 20), habeas corpus proceedings were instituted in the United States District Court for the Middle District of Alabama. The habeas corpus petition was based in part on the alleged involuntariness of a confession. The U. S. District Court denied the petition, 257 F.Supp. 1013, and on appeal the Fifth Circuit affirmed, 385 F.2d 102. The United States

Supreme Court granted certiorari, 393 U.S. 822, 89 S.Ct. 224, 21 L.Ed.2d 93.

Although not raised in the courts of this state, or in the District Court or the Circuit Court of Appeals, nor in the petition for certiorari filed in the U. S. Supreme Court, it was shown by the record that a number of jurors had been excused on challenge because of their fixed opinion against capital punishment. The U. S. Supreme Court vacated the judgment of affirmance entered by the Fifth Circuit Court of Appeals and remanded the case to the United States District Court "where the issue that has belatedly been brought to our attention may be properly and fully considered." 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433. The issue to be properly and fully considered by the District Court was the matter of excusing the veniremen for cause upon their answering affirmatively, and without further elucidation, that they had a fixed opinion against capital punishment.

In Jackson v. State, 285 Ala. 564, 234 So. 2d 579, we were presented with the same question as is now being considered, i. e., the excusing of veniremen for cause in view of their answers to the general question of whether they had a fixed opinion against the imposition of capital punishment.

There we followed the procedure which we concluded was used by the United States Supreme Court in *Boulden,* supra, and remanded the case to the lower court with the following statement:

"Accordingly, this case is remanded to the lower court with instructions that a hearing be conducted with the appellant and his attorneys present, and those jurors who were excused upon challenge because of their affirmative answers to the general question as to a fixed opinion against capital punishment, be summonsed and examined.

"This examination should be directed toward determining whether or not they could, in view of their affirmative answers as to having fixed opinions against

**308**

capital punishment, nevertheless consider the evidence and instructions of the court and return a verdict of guilty although that verdict could result in a death penalty, if they, being the triers of fact were convinced of the guilt of the accused, and that the facts warranted a sentence of death.

"The court is further instructed that this hearing be conducted as speedily as is feasible, that a full record be made thereof, a transcript of such record be made, together with the court's conclusions from the evidence adduced, and that a transcript of these proceedings under the seal of the clerk, be promptly forwarded to this court."

This case is likewise remanded to the Circuit Court of Etowah County for further proceedings in accordance with this opinion.

Remanded for further proceedings in accordance with this opinion.

SIMPSON, MERRILL, COLEMAN, BLOODWORTH, MADDOX and Mc-CALL, JJ., concur.

HEFLIN, C. J., and LAWSON, J., concur in result.

### After Remandment

HARWOOD, Justice.

Pursuant to our order of remandment, a hearing was had by the court below and the following facts were developed.

■ Of the four jurors excused on challenge by the state because of their negative answers to the question of whether they believed in capital punishment, jurors Johnson, Wright, and Neal testified at the hearing to the effect that they were inherently opposed to the death penalty no matter what the evidence might be, and would automatically vote against the death penalty without regard to the evidence produced at the trial. This had been their view, prior to, and at the time of the trial. We therefore hold that the testimony of these three jurors was a sufficient basis for sustaining the challenge to each of said jurors because of their opposition to the infliction of the death penalty under any circumstances, and that the requirements of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L. Ed.2d 776, were met as to these three jurors. Jackson v. State, After Remandment, 286 Ala. 287, 239 So.2d 303.

■ However, in the hearing below it was shown that the juror Herman Williams had died prior to the hearing.

We are thus presented with the question of whether a reversal of this judgment is impelled by the impossibility of showing that the full extent of a deceased juror's feelings at the time of trial toward infliction of the death penalty were such that he would automatically vote against such penalty regardless of the evidence presented.

Section 57, Title 30, Code of Alabama 1940, reads:

"On the trial for any offense which may be punished capitally, or by imprisonment in the penitentiary, it is a good cause of challenge by the state that the person has a fixed opinion against capital or penitentiary punishments, or thinks that a conviction should not be had on circumstantial evidence; which cause of challenge may be proved by the oath of the person, or by other evidence."

The above code section has been in seven of our prior codes. Similar code sections are to be found in the codes of our sister states. In this state it has been held throughout the decades that this code section furnished, without more, a valid cause of challenge by the state of any juror affirmatively expressing a fixed opinion against capital punishment. This was the applicable rule at the time of the trial of this cause.

Regardless of what might be our views, we are bound by the decisions of the Su-

preme Court of the United States on matters involving federal questions. Howard v. Davis, 209 Ala. 113, 95 So. 354; State v. Curran, 220 Ala. 4, 124 So. 909; Opinion of the Justices, 278 Ala. 412, 178 So.2d 641.

Inherent in the question now being considered is the application of the Sixth and Fourteenth Amendments of the United States Constitution to the facts shown. We must look to and be bound by pronouncements of the United States Supreme Court in reaching our conclusions.

We refer to the following statement from *Witherspoon*, supra:

"Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected. 391 U.S. at 521–522, 88 S.Ct. at 1776."

These same views were reiterated and emphasized in Boulden v. Holman, Warden, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433.

In Marion v. Beto (CCA 5), 434 F.2d 29, the court stated:

"The bare question here then is whether the improper exclusion for cause of a relatively small number of the total number of veniremen questioned on the grounds of mere conscientious scruples against the death penalty deprives the defendant of the impartial jury required by the Sixth and Fourteenth Amendments."

The court answered the question as follows:

"Where, as here, unanimity of decision is required to impose the death sentence, the stark reality is that one improperly excluded juror may mean the difference between life or death for a defendant. Although a defendant certainly has no assurance that a properly empaneled jury will not impose the death penalty, it seems to us that in light of the vast difference in treatment which may result from the improper exclusion of a single venireman, even that degree of error is prejudicial to the rights of a defendant in a capital case."

Mindful that theoretically we are not bound by the decisions of the federal courts other than the decisions of the United States Supreme Court, yet the practical reality is that the Federal District Courts within the Fifth Federal Circuit are bound by the decisions of the United States Circuit Court of Appeals for the Fifth Circuit. On habeas corpus in a federal court within the Fifth Circuit, the result would be a foregone conclusion.

But this aside, we agree with the conclusions reached in Marion v. Beto, supra, that the enunciations to be found in *Witherspoon* and in *Boulden*, supra, compel the conclusion reached. To the same effect are the conclusions reached in Woodards v. Maxwell, 303 F.Supp. 690 (S.D.Ohio); People v. Schader, 71 Cal.2d 761, 80 Cal.Rptr. 1, 457 P.2d 841; In re Hillery, 71 Cal.2d 857, 79 Cal.Rptr. 733, 457 P.2d 565.

In Marion v. Beto, supra, it is stated that several courts have answered the question in the negative, i. e., that the exclusion of a relatively small number of "scrupled" jurors of the total number of jurors excused does not deprive a defendant of an impartial jury as constitutionally required. In this connection are cited Bell v. Patterson (CCA 10), 402 F.2d 394; State of New Jersey v. Mathis, 52 N.J. 238, 245 A.2d 20; Pittman v. State (Tex.Cr.App.), 434 S.W.2d 352. After reading these cases, we are unconvinced that they were in fact opposed to the conclusion reached in Marion v. Beto, supra.

In State v. Mathis, supra, the New Jersey Supreme Court stated:

"The practice in our State has been to probe under oath, N.J.S. 2A:78–4,

N.J.S.A., a juror's claim of scruples to ascertain whether it thus disables him from discharging the statutory duty to decide what the punishment should be."

The court points out that under New Jersey decisions a juror could not be excused for cause merely because of a bias or scruple against capital punishment so long as such scruple does not prevent his consideration of the issue of punishment. The court then considered the voir dire examination of the jurors and concluded:

"Hence the jury was selected with the correct test in mind."

In Pittman v. Texas, supra, the Texas Court of Criminal Appeals wrote:

"It has long been the traditional practice in Texas, before and after the effective date of the 1965 Code, not to excuse a juror in capital cases who simply stated he had conscientious scruples against the death penalty but to interrogate such juror further to determine if this means that he or she could never vote for the death penalty. The challenge for cause on this ground has always been understood to mean that because of such scruples the juror could never vote to inflict the death penalty in any case regardless of the facts or circumstances. Until this appeared the challenge for cause was not sustainable. Such practice squares with the requirements of Witherspoon."

In Bell v. Patterson, supra, the court found that of the fifteen jurors excused because of their negative attitudes toward capital punishment, thirteen were properly excused because they indicated they would be unable to impose a death sentence in any case. As to the remaining two jurors, it was not sufficiently developed that they would automatically vote against the death penalty. The court points out that there were other jurors evincing conscientious scruples who were not excused for cause. The court found that under these conditions it could not be said that the jury

failed to reflect a cross section of society, nor that the state had crossed the line of neutrality by the systematic exclusion of any significant element of the community, i. e., those who opposed capital punishment. This, the court considered, distinguished the case under consideration from *Witherspoon*.

A yet more significant distinction from *Witherspoon* the court felt was that in *Witherspoon* the exclusions were based upon a state statute and involved an intentional application of an improper standard, that is the absolute right of challenge for cause solely on an expression of opposition to the death penalty, without a further examination to determine if the jurors' opposition would compel him to automatically refuse to impose such penalty regardless of the evidence.

Such distinction from *Witherspoon* is not available in the present case. Our statute, set out above, gives to the state the right to challenge for cause, and without further examination any juror who states he has a fixed opinion against capital punishment. Clearly under *Witherspoon* this is no longer an allowable procedure.

Regardless of our views as to the soundness of the *Witherspoon* doctrine, we are bound thereby, and must perforce reverse the judgment in this case because of the exclusion of the juror Herman Williams.

■ We also wish to make the following admonition to the trial courts. In all capital cases a juror answering that he has a fixed opinion against capital punishment, cannot properly be challenged solely on the basis of such answer. He should be examined fully to determine if his feelings as to capital punishment are sufficiently strong that he would automatically refuse to impose a death sentence regardless of the evidence produced.

The trial court should further make certain that the court reporter takes full notes from which a transcription can be made of

the examination of the jurors relative to qualifying them.

For the reasons stated above this judgment must be reversed.

Reversed and remanded.

LAWSON, SIMPSON, MERRILL, BLOODWORTH, MADDOX and Mc-CALL, JJ., concur.

HEFLIN, C. J., concurs in result.