407 So.2d 845 (1979)
Ex parte: Charles BRACEWELL.
(Re: Charles Bracewell, alias v. State of Alabama.)
No. 78-301.
Supreme Court of Alabama.
July 6, 1979.
Rehearing Denied September 7, 1979.
Griffin Sikes and John B. Givhan, Andalusia, for petitioner.
Charles A. Graddick, Atty. Gen. and James F. Hampton, Asst. Atty. Gen., for the State of Alabama, Opposed.
FAULKNER, Justice.
Bracewell was convicted under Alabama's Capital Felony Statute, § 13-11-1, et seq., Code 1975, of the robbery and intentional killing of Rex Carnley and was sentenced to death. The Court of Criminal Appeals affirmed the conviction and sentence. We granted certiorari as required by Rule 39(c) ARAP, and now remand for further proceedings.
*846 The facts of this case are detailed in the opinion by the Court of Criminal Appeals. Only one aspect of the trial proceedings need concern us on certiorari, the jury venire. Bracewell presents two challenges to the venire. First he asserts that jurors were improperly excused outside his presence. In Lassiter v. State, 36 Ala.App. 695, 63 So.2d 222 (1953), the Court of Appeals held that in a venire pursuant to what is now § 12-16-120, Code 1975, a defendant in a capital case has an absolute right to have excuses from jury service heard and determined in his presence. In the instant case, however, the trial court relied on the authority of Local Act No. 200, Acts 1971, p. 493, to excuse jurors for age or business reasons outside the presence of the defendant. Act No. 200 provides:
"In all capital cases where trial by a jury is held before the Circuit Court of Covington County, Alabama, the judge presiding over the empanelment of the jury venire in said capital case is authorized to excuse any prospective juror outside the presence of the defendant provided said juror has a legal excuse for being excused and it shall be within the discretion of the judge to determine whether said prospective juror's excuse is legal; provided that in no case shall there be a smaller number of jurors to select from in said capital case than provided by statutes now in force and effect."
Bracewell contends that this local act violates § 105 of the Constitution of 1901 which prohibits local laws in cases which are provided for by general law. Under the rules announced in Peddycoart v. Birmingham, 354 So.2d 808 (Ala.1978), Bracewell's analysis is correct. We note, however, that the ruling in Peddycoart was specifically made prospective. "With regard to legislation heretofore enacted, the validity of which is challenged, this Court will apply the rules which it has heretofore applied in similar cases." 354 So.2d at 814. Thus the validity of the local act is controlled by Stewart v. State, 245 Ala. 511, 17 So.2d 871 (1944), and Thigpen v. State, 49 Ala.App. 233, 270 So.2d 666 (1972), which held that similar acts applying to Jefferson and Mobile counties were constitutional. The trial court did not commit error in excusing these jurors outside the presence of the defendant.
Greater difficulties are presented, however, in the excusing for cause of one of the jurors, Edna Gore. In response to the question, "Do any of you have a fixed opinion against capital punishment?" Gore replied, "I do." On voir dire the following dialogue took place between Gore and the assistant district attorney:
"MR. COOK: Are you saying that you would never under any circumstances and in any case whatever return a death penalty?
"JUROR: I am afraid I wouldn't.
"MR. COOK: You would not no matter what the circumstances or what has been involved or are you just saying that you would rather not do that?
"JUROR: I had rather not. I mean, I wouldn't say that I wouldn't but I would rather not.

"MR. COOK: But you do say, if the case were bad enough you might return a verdict of death?
"JUROR: I just don't know how I would want to answer that, but I would hate to be responsible for that.

"MR. COOK: Yes, ma'am, but you understand this case involves that?
"JUROR: Yes, I do.
"MR. COOK: And you are saying that you could not and would not? Tell us now.
"JUROR: I don't believe I would. No."
(Emphasis added.)
On this issue we must agree with the dissenting opinion of Judge Bookout in this case. (MS. at 31) 407 So.2d at 827. Gore's responses were virtually indistinguishable from those which led to a reversal in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). While such a result may seem harsh, the need for it is clear. As Mr. Justice Stewart stated in Witherspoon, a jury in a capital felony trial *847 "can do little moreand must do nothing lessthan express the conscience of the community on the ultimate question of life or death.... Culled of all who harbor doubts about the wisdom of capital punishmentof all who would be reluctant to pronounce the extreme penalty such a jury [cannot speak for the community as a whole].... [W]hen [the trial court] swept from the jury all who expressed conscientious or religious scruples against capital punishment and all who opposed it in principle, the State crossed the line of neutrality. In its quest for a jury capable of imposing the death penalty, the State produced a jury uncommonly willing to condemn a man to die.... [A] State may not entrust the determination of whether a man is innocent or guilty to a tribunal `organized to convict.' [Similarly,] a State may not entrust the determination of whether a man should live or die to a tribunal organized to return a verdict of death." 391 U.S. at 519-521, 88 S.Ct. at 1775-76.
Accordingly, a juror may not be excused unless "he would automatically vote against [the death] penalty regardless of the evidence presented." Liddell v. State, 287 Ala. 299, 251 So.2d 601, 610 (1971). Therefore, this case must be remanded to the trial court for further proceedings to determine whether or not Juror Gore, in spite of her attitude towards capital punishment, could have considered the evidence and instructions of the court and returned a verdict of guilty if warranted. See Liddell, supra; Jackson v. State, 285 Ala. 564, 234 So.2d 579 (1970).
Bracewell raises several other points of error, but since each of these has been fully and correctly addressed by the Court of Criminal Appeals we see no need to discuss them again here. We do note, as did the Court of Criminal Appeals, that the trial court misapplied the aggravating circumstance, that the capital felony was committed for pecuniary gain. Section 13-11-6(6), Code 1975. Consequently, on remand the trial court should reconsider the findings it entered at the sentencing hearing in light of our decision in Cook v. State, 369 So.2d 1251 (Ala.1979).
REMANDED WITH INSTRUCTIONS.
TORBERT, C. J., and BLOODWORTH, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
MADDOX, J., dissents.
MADDOX, Justice (dissenting).
I would affirm the Court of Criminal Appeals. That Court found that "... an examination of Mrs. Gore's answers on voir dire reveals `an emphatically held opinion against capital punishment and a commitment against returning a guilty verdict in a capital case.'"
I would uphold the determination by the trial judge, affirmed by the Court of Criminal Appeals, that Mrs. Gore was disqualified for cause under the Witherspoon doctrine. If I understand her answers, she stated she would not impose the death penalty. Here's the closing colloquy:
"MR. COOK: May it please the Court, Mrs. Gore, you say that you have a fixed opinion against capital punishment and I apologize for singling you out in this case, but it is very important in this case and I am sure you realize that. Are you saying that you would never under any circumstances and in any case whatever return a death penalty?
"JUROR: I am afraid I wouldn't.
"MR. COOK: You would not no matter what the circumstances or what has been involved or are you just saying that you would rather not do that?
"JUROR: I had rather not. I mean, I wouldn't say that I wouldn't but I would rather not.
"MR. COOK: But you do say, if the case were bad enough you might return a verdict of death?
"JUROR: I just don't know how I would want to answer that, but I would hate to be responsible for that.
"MR. COOK: Yes, ma'am, but you understand this case involves that?
"JUROR: Yes, I do.

*848 "MR. COOK: And you are saying that you could not and would not? Tell us now.

"JUROR: I don't believe I would. No."

(Emphasis added.)
Whether Mrs. Gore was disqualified was a mixed question of law and fact, and today, this Court held that determining challenges for cause is a matter within the "discretion of the trial court." Ex parte Thomas, 373 So.2d 1167 (Ala.1979). The juror in Thomas was held to be qualified because he finally stated he could try the issues fairly and impartially. The juror here was equivocal at one point, just as the juror in Thomas, but when pressed for a final answer, she stated that she "would not" impose the death penalty. I voted to uphold the trial judge's discretion in Thomas; I vote to uphold the trial judge's discretion here, because I think juror Gore finally stated that she would not impose the death penalty. Under Witherspoon, that is disqualifying.
I also disagree with the majority in holding that the sentence cannot stand because the sentencing judge found, as an aggravating circumstance, that the capital felony was committed for pecuniary gain. Even assuming the intentional killing was not committed here for the purpose of getting "pecuniary gain," I would affirm. § 13-11-4 only requires that the sentencing judge find "one or more of the aggravating circumstances." (Emphasis added). See my special concurrence in Ex parte Cook, 369 So.2d 1251, 1259 (Ala.1979).