On Remand From Supreme Court of Alabama
In accordance with the opinion and order of the Alabama Supreme Court in Ex parte Bracewell v. State, Ala. 407 So.2d 845 (1979), this case is remanded to the trial court for further proceedings to determine whether or not Juror Edna Gore, in spite of her attitude towards capital punishment, could have considered the evidence and instructions of the court and returned a verdict of guilty if warranted. Seibold v. State, 287 Ala. 549, 253 So.2d 302 (1970).
Additionally, since the trial court misapplied the aggravating circumstance, that the capital felony was committed for pecuniary gain, Ala.Code § 13-11-6(6) (1975), the trial court is directed to reconsider the findings it entered at the sentencing hearing in light of the decision in Cook v. State, 369 So.2d 1251 (Ala.1978) and Bracewell, supra.
REMANDED WITH DIRECTIONS.
All the Judges concur.
On Return to Remand
HARRIS, Presiding Judge.
This case was remanded to the trial court for further proceedings to determine whether or not Juror Edna Gore, in spite of her attitude toward capital punishment, could have considered the evidence and instructions of the court and returned a verdict of guilty if warranted.
The trial court was further directed to reconsider the findings it entered at the sentencing hearing in light of the decision in Cook v. State, 369 So.2d 1251 (Ala.1978).
On December 4, 1979, the trial court held another hearing in strict conformity with our directives in the presence of the defendant, Charles Braeewell, and his court-appointed counsel. The State was represented by the District Attorney and the Assistant District Attorney.
We deem it advisable to set forth the entire testimony of Mrs. Gore given at the December 4, 1979, hearing:
“BY THE COURT:
“Q. You are Ms. Edna Pearl Gore?
“A. Correct.
“Q. And you are the same Ms. Edna Pearl Gore who was subpoenaed on the jury venire when the case of Charles Braeewell was tried back on March 15, 1978?
“A. Correct.
“Q. And, Ms. Gore, do you recall that the trial judge at that time asked a question about if you had a fixed opinion against capital punishment and you answered that you did?
“A. I do.
“Q. And, then some other questions were asked you?
“A. Yes.
“Q. This morning we are to determine what your attitude on March 15, 1978, towards the death penalty was. On March 15, 1978, would your attitude towards the death penalty have prevented you from making an impartial decision as to the guilt of the defendant?
“A. Repeat that, Mr. Baldwin?
*850 “Q. I said, was your attitude towards the death penalty, your attitude, your announced opposition to capital punishment?
“A. Yes.
“Q. Would it have prevented you from making an impartial decision as to the defendant’s guilt?
“A. No, I don’t believe so. I just don’t believe I could give the—
“Q. And, let me ask you this. Because of your attitude towards the death penalty, would you have automatically voted against the imposition of capital punishment without regard to any evidence that might have been déveloped at the trial. .. . Would you like for me to repeat that question?
“A. No. They are difficult questions to answer.
“Q. I understand and we understand your position, Ms. Gore. We just need to know your ....
“A. To live with myself, I don’t believe I could give the death penalty.
“Q. Can you answer this question, Ms. Gore? Because of your attitude towards the death penalty, would you automatically vote against the imposition of the death penalty without regard to any evidence that might be developed during the trial?
“A. I am afraid so.
“Q. All right.
“MR. SIKES: May I ask her a question?
“THE COURT: Yes.
“EXAMINATION
“BY MR. SIKES:
“Q. Ms. Gore, what we are trying to determine is whether or not you would automatically vote against the death penalty regardless of the evidence or how heinous the crime was, just automatically vote against it without considering the evidence?
“A. I just don’t know exactly what I would do. I will just be frank with you. I have got to live with myself and I just don’t know how my conscience is going to lead me.
“THE COURT: Ms. Gore, I realize this is hard to relate back, but we are talking about your attitude as of March 15, 1978, at the time you answered the other questions.
“MS. GORE: Yes, sir.
“THE COURT: And, Mr. Sikes has asked you a question and if you want it repeated .... we are not trying to bully or embarrass you in any way but we do need an answer on the question. If you can make an honest answer, is all we want you to do. . . . Can you reread his question so we can have an answer to his question?
“MR. SIKES: I thought she answered it. She said she didn’t know how she would answer.
“MS. GORE: I need to say yes or no to it?
“MR. SIKES: No, ma’am. I’m not asking you for a yes or no answer.
“THE COURT: Reread it to her, Mr. Embry, and see if she can give us an answer on it.
“MR. GIVHAN: We object to him rereading the question, Judge, on the grounds that she has already given her answer to the question.
“THE COURT: Overruled.
(Whereupon, the question propounded to the witness by Mr. Sikes was read back to the witness by the Court Reporter.)
“A. I believe I would have to consider the evidence.
“Q. All right.
“THE COURT: Anything further?
“MR. SIKES: I have nothing further.
“EXAMINATION
“BY MR. McGILL:
“Q. Let me ask you this question, Ms. Gore. Could your attitude towards the death penalty and having, as you put it, to live with your conscience, as you consider the evidence and with your attitude, and the statement that I would have to live with my conscience, would that state of mind affect your fair judgment to a point that you couldn’t render a fair and impartial verdict as to the defendant’s guilt in a particular case?
*851 “A. Well, that is my attitude. I am afraid that I would not be a good person to be on a jury.
“Q. Well, that is the question I am asking you. That fear that you have, do you feel that that would affect your judgment in rendering a fair and impartial decision as to the defendant’s guilt?
“A. That’s right.
“MR. McGILL: That’s all.
“THE COURT: Anything further?
“MR. SIKES: Nothing further.
“THE COURT: Thank you very much, Ms. Gore. And, Mr. Embry, you will prepare a transcript of this.”
We believe that a fair interpretation of Mrs. Gore’s testimony shows that she would have “automatically voted against the imposition of the death penalty no matter what the evidence introduced at the trial might reveal.” Certainly, her ingrained feelings toward the death penalty would have prevented her from rendering a fair and impartial verdict both to the State and the defendant.
We again hold that the trial court was correct in sustaining the State’s challenge to juror Gore.
In this same hearing the trial court made new findings on the aggravating and mitigating circumstances before resentenc-ing the defendant to death as follows:
“STATE OF ALABAMA, IN THE CIRCUIT COURT OF PLAINTIFF, COVINGTON COUNTY, ALABAMA
VS.
CHARLES BRACEWELL, DEFENDANT. CASE NO. CC-78-27
“This cause having been submitted for a reconsideration of the findings of the Court on the sentencing hearing held on April 17,1978; said reconsideration being pursuant to the Order of the Court of Criminal Appeals of the State of Alabama entered October 16, 1979.
“And, the Court having considered all the evidence introduced at said sentencing hearing finds the following aggravating circumstances:
“(1) That the homicide charged in this case was committed while the Defendant was engaged in the commission of a robbery or attempt to rob the deceased, Rex Camley.
“(2) That the Defendant, Charles Brace-well, was previously convicted of the felony offenses of kidnapping and robbery which said felonies involved the use or threat of violence to the person.
“(3) That the Defendant, Charles Brace-well, committed the capital felony with which he is charged in the commission of a robbery.
“(4) That the capital felony of which the Defendant, Charles Bracewell, was convicted of committing is an especially heinous, atrocious or cruel crime in that the deceased victim, Rex Carnley, was shot eight (8) times in and about the head and face.
“The Court further finds from the evidence that no mitigating circumstances are revealed in this case.
“It is therefore ORDERED AND ADJUDGED that the Defendant, Charles Bracewell, is guilty of the aggravated offense of robbery or attempt thereof in which the victim was intentionally killed by the Defendant.
“It is further ORDERED AND ADJUDGED that the aggravating circumstances as set out hereinabove outweigh mitigating circumstances which do not exist. The Court therefore sentences the Defendant, Charles Bracewell, to death, to be executed on Monday the 14th day of January, 1980, by causing to pass through the body of the Defendant, Charles Bracewell, a current of electricity of sufficient intensity to cause death, and the application and continuance of such current through the body of the Defendant, Charles Bracewell, until he is dead.
“The conviction and sentence of the Defendant, Charles Bracewell, being presently reviewed under the provisions of the automatic review statutes, the sentence is suspended pending a final determination of the Defendant’s appeal. “Done in office this the 6th day of December, 1979.
/s/ William H. Baldwin
CIRCUIT JUDGE”
*852 We are in full accord with the findings of the trial court and find that they are fully supported by the evidence in this case.
The judgment of conviction and the sentence of death are affirmed.
AFFIRMED.
HARRIS, P. J., and DeCARLO and BOWEN, JJ., concur.
TYSON, J., concurs with opinion.
BOOKOUT, J., concurs specially with opinion.