TYSON, Judge.
Gilbert Franklin Beck was indicted for and convicted of capital murder for the November 8, 1976, killing with a knife of retired veterinarian Roy Malone in rural Etowah County, Alabama. He was sentenced to death. This original conviction and subsequent sentence were affirmed by this court and the Alabama Supreme Court in Beck v. State, 365 So.2d 985 (Ala.Cr.App.), aff'd, 365 So.2d 1006 (Ala.1978). On appeal to the United States Supreme Court, however, that court in reversing and remanding the case for a new trial, determined that a death sentence could not be imposed after a jury verdict of guilt of a capital offense when the jury is not permitted to consider, through appropriate jury instructions, a verdict of guilt of a lesser included offense, when the evidence would have supported such a verdict. Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). On remand, the Alabama Supreme Court reviewed the Alabama Death Penalty Act and upheld it by severing its unconstitutional portions and by mandating new procedures for implementing it. Beck v. State, 396 So.2d 645 (Ala.1980). Pursuant to the remand from the United States Supreme Court and the directions that the new trial follow the requirements set forth by the Alabama Supreme Court in Beck, 396 So.2d 645, supra, this court remanded the cause for a new trial in Beck v. State, 396 So.2d 666 (Ala.Cr.App.1981).
A new trial in this cause was conducted, at the conclusion of which Gilbert Franklin Beck was again convicted of capital murder and sentenced to death. It is from this second conviction and sentence of death that the appellant, Gilbert Franklin Beck, prosecutes this appeal.
It is undisputed that on November 8, 1976, the appellant and Roy Frank Clements went to the home of Roy Malone in rural Etowah County with the intention of robbing him, and that at some point during the robbery, Dr. Malone was killed. The details of this incident and of other events leading up to and following this robbery-homicide are sufficiently and accurately covered in our previous opinion reported as Beck v. State, 365 So.2d 985 (Ala.Cr.App.1978). Only those details pertinent to the issues involved in this second appeal will be therefore restated herein.
I
One of the appellant’s principal arguments on this appeal is that the trial court erred in dismissing prospective juror Mattie Terrell because of her expressed opposition to capital punishment. The appellant, citing Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), contends that Mrs. Terrell could have been properly dismissed on this ground only if it was shown that she was “irrevocably committed, before the trial [had] begun, to vote against the death penalty regardless of the facts and circumstances that [emerged] in the course of the proceedings,” and that such a showing was not here made.
We agree with the appellant that this “irrevocably committed” language, taken from footnote 21 of the Witherspoon opinion, is the test which survived Witherspoon even though the holding, that “a sentence of death cannot be carried out if the jury that imposed or recommended it was cho *1198 sen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction ” (emphasis added), was much broader. See Witherspoon, supra, and compare Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970); and Davis v. Georgia, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976).
In accordance with the Witherspoon progeny, the rule in Alabama is that a prospective juror may be excused because of his opposition to capital punishment only if it is “sufficiently [shown] that he [or she] would automatically vote against the imposition of the death penalty no matter what the evidence introduced at trial might reveal.” Liddell v. State, 287 Ala. 299, 251 So.2d 601 (1971); Hill v. State, 371 So.2d 60 (Ala.Cr.App.1978), cert denied, 371 So.2d 64 (Ala.1979); Bracewell v. State, 407 So.2d 845 (Ala.1979), on remand, 407 So.2d 848 (Ala.Cr.App.1979). The similar language now codified in § 12-16-152, Code of Alabama 1975, is that it is a good cause of challenge if a person “would refuse to impose the death penalty regardless of the evidence produced.”
Having reviewed Mrs. Terrell’s answers on voir dire we are unable to determine whether or not, if she had been selected as a juror, she would have “automatically voted against the death penalty regardless of the evidence produced.” Her initial, unequivocal response on voir dire examination by the prosecution was recorded (R. 352) as follows:
“Q You would not under any circumstances nor conditions would you (sic) vote for death in the electric chair, if you were on a jury?
“A No.
“Q Okay, thank you.”
Because of this answer she was “challenged for cause” by the prosecution before any further inquiry. (R. 358). The trial court withheld its ruling on this challenge (and two others made at the same time) pending further examination.
After voir dire of several other prospective jurors, Mrs. Terrell was further examined on this issue of her opposition to capital punishment. She answered the defense attorney’s questions (R. 383) as follows:
“[Q] Now, Mrs. Terrell, again, back to this question. We are asking simply could you consider it, not that you would vote for it, not do you like it, but in this second hearing after looking at all of the facts and circumstances, weighing all of the evidence and listening to all of the arguments could you consider both the sentence of life without imprisonment without the possibility of parole, and the alternative?
“A You mean in this case?
“Q No, in general can you consider it?
“A I guess in cases I could.”
Her final response (R. 385) to the question of whether or not she could “vote for death in the electric chair under any circumstances” was:
“A I really don’t know. I believe I could if I had to, but I wouldn’t like to.”
Based on all of her responses, the trial court granted the prosecution’s challenge for cause of Mrs. Terrell.
From this record, however, we are not convinced that Mrs. Terrell “would automatically vote against the imposition of the death penalty, no matter what the evidence introduced at trial might reveal.”
In Williamson v. State, 370 So.2d 1054, 1059 (Ala.Cr.App.1978); Wilson v. State, 371 So.2d 932, 936 (Ala.Cr.App.1978), aff’d, 371 So.2d 943 (Ala.1979); Crawford v. State, 377 So.2d 145, 150 (Ala.Cr.App.), aff’d, 377 So.2d 159 (Ala.1979); Keller v. State, 380 So.2d 926, 931 (Ala.Cr.App.1979), and Bracewell v. State, 407 So.2d 848, 849 (Ala.Cr.App.1979) (after remand), we determined that prospective jurors were properly dismissed for cause either because their opposition to capital punishment was unequivocal or because ambiguities in their respective voir dire examinations were *1199 cleared up with affirmative answers when they were specifically asked if they would “automatically vote against the imposition of the death penalty without regard to any evidence that might be developed ” during the trial. (Emphasis added).
In the instant case, Mrs. Terrell’s first response, that she “would not under any circumstances nor conditions” vote for the death penalty, might have been sufficient to justify her dismissal. However, her additional responses that she “guessed” that she “could consider it, not that [she] would vote for it” and that she might be able to vote for it “if she had to” leave some doubt as to whether or not her dismissal was proper.
The appellant argues that Mrs. Terrell’s latter two responses prove that she was not “irrevocably committed” to vote against the death penalty. However, as the state points out, these answers do not resolve the issue because they appear to represent an effort by Mrs. Terrell, who was obviously intimidated by the whole ordeal of individual voir dire, to give each questioner the answers he wanted regardless of her convictions.
For these reasons, as we have done in other similar cases, we must remand this cause to the trial court for a hearing in order to answer the specific question of whether or not Mrs. Terrell “would automatically vote against the imposition of the death penalty no matter what the evidence introduced at the trial might reveal.” Jackson v. State, 285 Ala. 564, 234 So.2d 579 (1970); Liddell v. State, supra; Hill v. State, supra; Bracewell v. State, 407 So.2d 845 (Ala.1979). At this hearing, the trial court shall take every precaution to insure that Mrs. Terrell is examined in an atmosphere free of intimidation, that she understands the questions posed, and that she understands that her answers must be based upon her convictions about the death penalty at the time of her original voir dire examination in this cause.
We recognize that this additional hearing will be tedious and non-expeditious especially considering the fact that ordinarily, great deference is given the trial court in matters such as this. However, in all fairness to this appellant in keeping with the cases cited, such is a necessary procedure. The trial court should expedite this hearing and promptly forward to this court a transcript of the record made therefrom, together with the trial court’s findings and conclusions from the evidence so adduced. Jackson v. State, supra; Liddell v. State, supra.
Finally, we note that other important issues are raised in this appeal, but we withhold comment on these matters pending the additional hearing herein ordered.
This case is hereby remanded with directions for a hearing.
REMANDED WITH DIRECTIONS.
All the Judges concur.
On Return to Remand
TYSON, Judge.
This case was remanded to the trial court for further examination of prospective juror, Mattie Terrell, to determine whether or not she was properly dismissed from the jury venire through a challenge for cause by the District Attorney, due to her opposition to capital punishment. Her dismissal for cause due to her opposition to capital punishment was proper only if she was so opposed to capital punishment, that, if left on the jury, she would have “automatically vote[d] against the imposition of the death penalty no matter what the evidence introduced at trial might reveal.” See, Liddell v. State, 287 Ala. 299, 251 So.2d 601 (1971); Hill v. State, 371 So.2d 60 (Ala.Cr.App.1978), cert. denied, 371 So.2d 64 (Ala.1979), on remand, 371 So.2d 64 (Ala.Cr.App.1979); Bracewell v. State, 407 So.2d 845 (Ala. 1979), on remand, 407 So.2d 848 (Ala.Cr. App.1979), [cases which represent Alabama’s response to Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, 1968)].
I
On voir dire prior to the selection of the jury for appellant’s trial below, her an *1200 swers to questions with reference this issue were ambiguous, thereby necessitating this subsequent examination.
On December 28, 1982, the trial court held another hearing in compliance with our instructions. Beck v. State, [7 Div. 907, August 24, 1982], (Ala.Cr.App.1982). The pertinent portion of this hearing reads as follows:
“DIRECT EXAMINATION BY DISTRICT ATTORNEY RAYBURN:

“Q Now, Mrs. Terrell, I will ask you a specific question of whether if you were to sit on trial of Mr. Beck as to whether or not you would automatically vote against the imposition of the death penalty, no matter what the evidence introduced at the trial might reveal?
“A Your Honor, may I explain myself? I would not automatically do anything. I don’t understand the question, but I can explain myself.
“THE COURT: Go ahead, explain what you would or would not do.
“A If I was sitting on Mr. Beck’s trial, anybody else’s trial, I would not automatically give no death penalty because I don’t believe in the death penalty. But, if I was on trial and I had to, I could.
“THE COURT: Let’s go a little bit further into it. What do you mean by ‘have to?’
“A Okay, May I explain myself?
“THE COURT: Yes.
“A If I was on the jury and everybody else seemed that it had to be a death penalty, and I was the last one, I could go along with him.
“THE COURT: Do I understand you that if eleven people on the jury, you were the twelfth one, and all of the other eleven voted for the death penalty, that in that case you would vote for the death penalty—
“A Yes, sir.
“Q —to make it unanimous?
“A Yes, I would.
“THE COURT: All right.
“MR. CARROLL: We have nothing further, Judge.
“THE COURT: Anything further?
“(Whereupon, District Attorney Rayburn continued his examination:)
“Q Let me put it another way.
“MR. CARROLL: Judge, the witness has answered the question in as clear as possible language. And this, again, is the same thing as intimidation on the part of the District Attorney to try to get her to change her mind.
“THE COURT: Those are your feelings?
“A Yes, sir.
“THE COURT: You are basically, I understand, from your answers before, basically against the death penalty.
“A Yes, sir.
“THE COURT: But, if all of the jurors, except you were to vote for the death penalty you would.
“A I would.
“THE COURT: All right.
“MR. CARROLL: Thank you, Judge.
“THE COURT: Thank you very much, Mrs. Terrell.
“DISTRICT ATTORNEY RAYBURN: Judge, may we inquire into one thing—
“THE COURT: I beg your pardon?
“DISTRICT ATTORNEY RAYBURN: —as to relative as to time? In other words, she — this is her feeling now. Were her feelings the same at the time the incident happened?
“THE COURT: When you were here before and you were against the death penalty, were your feelings the same at that time?
“A They was. If I am not mistaken I think I said that.
“THE COURT: I think you did.
“A I told him if I had to I would, but I wouldn’t like to. That may not be my exact words, but that is what I meant.
“THE COURT: Okay, thank you very much, Mrs. Terrell.
“(END OF PROCEEDINGS)”
Based on this additional examination, and her answers as shown, we have concluded *1201 that Mrs. Terrell should not have been dismissed because of her opposition to capital punishment. For this reason the appellant’s conviction and sentence below must be reversed and this cause must be remanded for another trial. Liddell v. State, supra; Hill v. State, supra.
Because of this legal error, we pretermit consideration of other assignments of error raised on this appeal.
For the reasons specified above, the appellant’s conviction is reversed and this cause is hereby remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.