AFTER REMANDMENT FROM THE UNITED STATES SUPREME COURT
Charles Bracewell, the appellant herein, was convicted of the capital offense of robbing and murdering Rex Carnley, whose body was found inside his rural store near Opp, Alabama, where he had been shot numerous times in the face and head with his own .22 caliber pistol. The trial court held a separate sentencing hearing and sentenced the appellant to death by electrocution.
The trial court's judgment of conviction was eventually reversed and remanded by the Alabama Court of Criminal Appeals on the authority of Beck v. Alabama, 447 U.S. 625,100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), and Ritter v. State, 403 So.2d 154
(Ala. 1981). See Bracewell v. State, 407 So.2d 827
(Ala.Crim.App.), remanded, 407 So.2d 845 (Ala. 1979), on remand, 407 So.2d 848 (Ala.Crim.App. 1980), reversed,407 So.2d 853 (Ala.), after remandment, 407 So.2d 854 (Ala.Crim.App.), cert. denied, 407 So.2d 854 (Ala. 1981). However, the United States Supreme Court vacated that decision and remanded appellant's case to us for further consideration in light ofHopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367
(1982). Alabama v. Bracewell, 457 U.S. 1114, 102 S.Ct. 2920,73 L.Ed.2d 1325 (1982). For the reasons explained herein, appellant's conviction is now due to be reversed.
The appellant was convicted of murdering Rex Carnley with Carnley's own .22 caliber pistol during a robbery inside Carnley's store on the morning of August 15, 1977. The details of the crime pertinent to this case are adequately set forth inBracewell v. State, 407 So.2d 827 (Ala.Crim.App.), supra. Seealso, Debra Bracewell v. State, 447 So.2d 815, affirmed,447 So.2d 827 (Ala. 1984). Only those facts applicable to the issues now before us will be repeated herein.
As the State points out in brief, most of those issues raised in appellant's original appeal to this court, incorporated in this appeal by reference, were addressed and properly decided adversely to the appellant in Bracewell v. State,407 So.2d 827, supra. Those issues which have thus been resolved will not be re-addressed at this time.
Consequently, the only guilt-phase issue now before us is appellant's contention that the existence of the preclusion clause in Alabama's death penalty statute denied him a fair trial either because at trial there was evidence of a lesser included offense or because there are plausible lesser included offense claims that he might have made had there been no preclusion clause.
The resolution of this issue is governed by the two-prong test derived from Hopper v. Evans, 456 U.S. 605,102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), and prescribed by the Alabama Supreme Court in Cook v. State, 431 So.2d 1322 (Ala. 1983); as follows:
 "(1) Was there any evidence presented at trial upon which a conviction of a lesser included offense could have been based?
 "(2) If not, has the defendant suggested any plausible claim which he might conceivably have made, had there been no preclusion clause, that is not contradicted by his own testimony at trial?"
If the answer to each of these questions is "no" then the existence of the preclusion clause does not entitle the appellant to a new trial. See, Cook v. State, supra.
After a careful review of the record before us we have concluded, in spite of appellant's claims to the contrary, that there was no evidence presented to the jury to support a conviction for a lesser included offense. The State proved that Carnley was the victim of a brutal murder during the course of a robbery and that the appellant and his wife, Debra Bracewell, were the murderers. It was undisputed at trial that Carnley died as a result of multiple gunshot wounds to his face and head. He was found inside his store face down in a *Page 618 
pool of blood. It was also undisputed that his wallet and its contents, including a large amount of cash, had been taken at the time of the murder. All of the evidence presented at trial supported the theory that the person or persons who murdered Carnley also took his wallet. Appellant's confessions, presented by the State, confirmed the fact that the appellant was an active participant in this robbery-murder. Neither the State nor the appellant presented any evidence or any theory that the appellant might have been guilty of only the murder or of only the robbery, but not both. And neither presented any other evidence of a lesser included offense.
The appellant did not present any witnesses in his behalf and he did not testify during the guilt-phase of the trial. He did re-call Carnley's former wife[1] and did "cross-examine" her concerning a possible motive she might have had for killing Carnley. However, there is nothing in the record of the guilt-phase of the trial to indicate how this line of questioning would have supported a conviction for a lesser included offense. As the State points out, evidence tending to prove that Mrs. Carnley killed her former husband, by itself, would have totally exonerated the appellant. There was no evidence, whatsoever, that the appellant only committed some lesser offense either before or after Carnley was murdered.
Nevertheless, the appellant now proposes on appeal three theories which he claims might have supported a conviction for the lesser included offenses of either larceny or murder. First, he argues that the fact that after the body was discovered money was found in the victim's front pants pocket and in several other locations inside the store might have persuaded the jury that Carnley was murdered but not robbed, a conclusion which would have supported a murder conviction. Secondly, he contends that the fact that the padlock on the outside of the front door of Carnley's store, a padlock which had been locked by Mrs. Carnley the previous evening, had been unlocked on the morning of the murder before Carnley's body was discovered might have convinced the jury that Mrs. Carnley, who had a key to the padlock, unlocked the padlock and committed the murder and that the appellant and Debra Bracewell, merely took Carnley's wallet after he had been killed. Finally, he contends that the jury might have concluded from the evidence that Debra Bracewell shot Carnley first, that she alone was the murderer and that the appellant was only a participant in the robbery, a conclusion which might have led to a felony-murder conviction.[2]
Appellant's arguments that the evidence presented to the jury supported these theories are unconvincing. The fact that other valuables were not taken during the robbery would not have supported a conclusion that there was no robbery. It was undisputed that the victim's wallet and its contents were taken. Mrs. Carnley testified that Carnley had the wallet in his back pocket when she left him inside the store at 8:00 p.m. the night before he was killed. The wallet and its contents were missing when the body was discovered the next morning. In appellant's several confessions introduced by the State at trial, which constituted the only evidence of what transpired during the course of the incident which resulted in Carnley's death, the appellant consistently stated that he and Debra went to Carnley's store to rob Carnley, that they threatened Carnley with a pistol and demanded money, and that they shot him and took his wallet and its contents from the back pocket of his trousers. There was no other evidence to explain the *Page 619 
disappearance of the wallet.[3] If the appellant murdered Carnley, his only reasonable motive was robbery. Any other theory was simply not evidenced in the record.
The condition of the padlock on the front door, by itself, was of no probative value. For aught that appears in the record Carnley, himself, opened the store that morning and began preparations for another normal business day before the Bracewells arrived. He customarily opened the store very early in the morning. His body was discovered by a neighbor who had driven to Carnley's store to purchase some gasoline, because he knew that it would be open that early in the morning. Apparently, Carnley had exited through the rear sliding door and had walked around the building to the front and had unlocked the padlock on the front door from the outside. In his confessions, the appellant stated that Carnley indeed let them in through the front door. When Carnley's body was discovered, the front door was open, as the appellant had described it, and the rear sliding door was open. Furthermore, even if the jury had believed that the condition of the padlock implicated Mrs. Carnley, such a belief would have totally exonerated the appellant (for the same reasons as discussed above with reference to the evidence of Mrs. Carnley's alleged motive). There simply was no basis from the evidence presented to support a conclusion that Mrs. Carnley was the killer and that the Bracewells merely took the wallet after Carnley was dead.
As noted above, the only evidence of what transpired inside Carnley's Store that morning came from appellant's numerous confessions, in which he consistently stated that, after Debra had shot Carnley in the back of the head, he, the appellant, while Carnley was still alive, took the pistol from Debra and deliberately fired five or six more rounds into Carnley's face. There was no evidence to refute the fact that the appellant, at the very least, assisted in killing Carnley, i.e., there was no evidence disputing the fact that the appellant intentionally shot Carnley five or six times in the face with a .22 caliber pistol. Carnley died "as a result of acute central nervous system trauma, or brain damage, and intracranial hemorrhaging, or bleeding, within the skull subsequent to multiple gunshot wounds to the head." According to appellant's confessions, he himself inflicted the majority of those wounds. Contrary to his assertions on appeal, there is no evidence whatsoever that might have led the jury to believe that Debra alone was responsible for Carnley's death, i.e., that the parts of his confessions describing how Debra shot the victim were true, but that the parts explaining his part in shooting the victim were false.
Consequently, the answer to the first prong of the Cook test is "no." See and compare, Hopper v. Evans, supra; Cook, supra;Hill v. State, 455 So.2d 930 (Ala.Crim.App.), affirmed,455 So.2d 938 (Ala. 1984). On the basis of the evidence presented to the jury the appellant was either guilty of the capital offense as charged, or he was innocent. In addressing the first prong of the Cook test, we need not speculate as to evidence that might have been presented to provide the missing links in the lesser included offense theories that the appellant now asserts.
The appellant argues in the alternative that, if these lesser included offense theories were not sufficiently developed for the jury, they might have been so developed had there been no preclusion clause. He explains that these theories are plausible and could not have been contradicted by his own testimony, as was the case in Cook, because he did not testify.
The State contends that however plausible these theories might be, they are contradicted by the evidence presented either during the guilt-phase hearing before the jury or during the sentencing-phase hearing before the trial court. While we agree *Page 620 
with the State that it seems very unlikely that the appellant chose not to present evidence of these lesser included offense theories because of the preclusion clause[4] and that in light of appellant's several consistent confessions, it seems equally unlikely that evidence in support of these theories would have convinced the jury that the appellant was guilty of only some lesser offense, we are not persuaded that all the theories now raised on appeal were contradicted by appellant's evidence at trial.
In Cook v. State, supra, and in Tomlin v. State, 443 So.2d 59
(Ala. 1983), the defendants presented, through their own testimony at trial, alibi defenses which contradicted any lesser included offense theories that they might have developed but for the preclusion clause. In Hopper v. Evans, supra, and in Ritter v. State, 429 So.2d 928, 933 (Ala. 1983), the defendants not only confessed their guilt before trial, as the appellant did below, but also admitted to the jury from the witness stand that they had, indeed, committed the offenses charged. Those in-court confessions "affirmatively negated" any lesser included offense theories that those defendants might have developed but for the preclusion clause. In Cook, Tomlin,Hopper v. Evans, and Ritter, it was held that the existence of the preclusion clause did not entitle the respective defendants to new trials, because their own testimony directly contradicted any evidence which they might have otherwise presented. We cannot make the same conclusion in the instant case.
During the guilt-phase of his trial, although the State introduced his pre-trial confessions, the appellant did not present any evidence which contradicts his lesser included offense theories. He did not testify and he presented no evidence directly refuting the State's case against him. In cross-examining Mrs. Carnley, he did introduce evidence concerning a possible motive she might have had for killing Carnley, but the record does not reveal how, or even if, this evidence was argued to the jury.[5] For aught that appears in the record of the guilt-phase of appellant's trial, he presented nothing in the nature of an alibi defense, see, Cook, Tomlin, and Hill v. State, supra, nor did he testify before the jury and admit his guilt of the crime charged, see, Hopper v. Evans, and Ritter.
The appellant did testify, however, at the sentencing-phase hearing before the trial court. He claimed that he was told by Carnley's brother-in-law, Charles Finley Ham, that Ham's sister, Mrs. Carnley, had killed Carnley. He also claimed that Ham had told Debra Bracewell the same thing. Afterwards the appellant told the trial court:
 "I just would like to say one thing. That I don't know who did it. I wouldn't say that they did or they didn't, but I know that me and my wife didn't do it. And for his family, that is sitting out here, I don't care what the jury said or the Judge says or what nobody believes. We didn't do it. And the most important thing is, no matter if I die in the electric chair, I just want his family to know that we did not do it."
The State contends that this testimony during the sentencing-phase of appellant's trial directly contradicts all lesser included offense theories. We disagree.
Appellant's general denial that "we did not do it" could, arguably, be interpreted, as the State suggests, as a claim that the Bracewells had nothing, whatsoever, to do with the alleged robbery-murder of Carnley. Such a claim would have been in the nature of an alibi defense along the lines of the defense presented in Hill v. State, supra.[6] If this were the only interpretation *Page 621 
of appellant's testimony, then we would have to agree that lesser included offense theories would be in conflict.
However, appellant's general denial — "we did not do it" — could also be interpreted as a claim that the Bracewells did not kill Carnley and did not know who did. This claim, unlike the alibi defense, would have been more or less an extension of appellant's "not guilty" plea. The Alabama Supreme Court stated in Cook v. State, supra:
 "A plea of not guilty merely says that the defendant claims he is not guilty of the crime charged. It does not preclude the jury from considering evidence which tends to show that the defendant may be guilty of some other, lesser included crime."
Therefore, appellant's general denial that "we did not do it" is arguably a claim that "he is not guilty of the crime charged." Accordingly, in keeping with the Cook analysis, appellant's own testimony would not have precluded the jury from hearing any and all lesser included offense evidence.
In Hopper v. Evans, supra, the United States Supreme Court, after concluding that Evans had suggested "no plausible claim which he might conceivably have made, had there been no preclusion clause, that is not contradicted by his own testimony at trial," noted:
 "In another case with different facts, a defendant might make a plausible claim that he would have employed different trial tactics — for example, that he would have introduced certain evidence or requested certain jury instructions — but for the preclusion clause."
The instant case is that other case. Unlike the defendants inCook, Tomlin, and Hill, the appellant did not present an alibi defense. Unlike the defendants in Hopper v. Evans and Ritter, the appellant did not admit his guilt from the witness stand. There were no eyewitnesses against him and there were no fingerprints nor any other physical evidence to connect him with the crime. The only direct evidence of appellant's guilt was his confessions, which he challenged, although unsuccessfully, during the guilt-phase of his trial. Under these circumstances we cannot dismiss appellant's contention that, but for the preclusion clause, he might have changed his trial tactics and introduced other evidence, perhaps even his own testimony, to refute the State's case and to support lesser included offense instructions.[7] We can find nothing in appellant's testimony that directly or positively contradicts the claim that he and Debra merely took Carnley's wallet after Carnley had been killed by someone else.
Because there is at least one "plausible claim which [the appellant] might conceivably have made, had there been no preclusion clause, that is not contradicted by his own testimony at trial" the answer to the second prong of the Cook
test must be "yes." Consequently, we cannot hold as a matter of law that the preclusion clause did not prejudice appellant's case. The appellant is, therefore, entitled to a new trial.Compare, Beck v. State, supra; and Debra Bracewell v. State,401 So.2d 130 (Ala.Crim.App.), cert. denied, 401 So.2d 130
(Ala. 1981) (reversing Debra Bracewell's first conviction because of the existence of the preclusion clause).
Because this case must be remanded for a new trial, a trial which shall be held in compliance with the mandates of Beck v.State, 396 So.2d 645 (Ala. 1980), and its progeny, including a bifurcated trial before a new jury, we need not address possible sentencing-phase errors committed below.
For the reasons herein stated this cause is due to be reversed and remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur, except TAYLOR, J., who dissents.
[1] Although the Carnleys were "back together" at the time of Mr. Carnley's death, there was evidence that they were no longer married, that they had been divorced because Carnley had physically abused his wife.
[2] This latter theory is of the same type as that which necessitated the new trial granted in Beck. See, Beck v.Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). In Beck, however, there was direct evidence to support the defendant's theory.
[3] Moreover, a consummated robbery was not an essential element of the offense charged. An attempted robbery would have supported a conviction even if nothing had been taken from the store. See, § 13-11-2 (a)(2), Code of Alabama 1975.
[4] Although lesser included offense instructions were barred by the preclusion clause, convincing evidence that the appellant was only guilty of the murder, or the robbery, but not both, might have resulted in an acquittal, a result arguably warranting the presentation at trial of proof negating either or both of these elements.
[5] The record contains only a few segments of the closing argument by appellant's counsel.
[6] Hill did not claim that he was in some distant location when the crime was committed (the typical alibi defense), but did claim that he had nothing to do with it.
[7] Even in the face of the preclusion clause, and in light of the evidence that was presented, the appellant did make, after the trial court's oral charge, a general appeal for lesser included offense instructions. He was, apparently, not content to gamble on an acquittal. *Page 622