# Dodson *v.* The State.

*Indictment for Burglary.*

1. *Admissibility of confessions.*—Defendant, a freedman, having been arrested, without a warrant, by several other freedmen, one of whom was the prosecutor, whose house he was charged with having entered burglariously, asked one of them, "what would be the best for him to do," and was answered, "that if he got the money, it would be best for him to tell all about it, but not to own to it if he did not get the money;" *held*, that confessions then made, without other inducements, were voluntary and admissible.

2. *Same; when part of conversation has been called out by defendant.* When the defendant himself has called out part of a conversation, in which he made confessions or admissions, this renders the whole conversation admissible as evidence for the prosecution.

3. *Recent possession of stolen property.*—On a trial for burglary with intent to steal, the defendant's recent possession of the goods stolen from the house is admissible as evidence against him, and devolves on him the *onus* of explaining how he acquired them.

Vol. LXXXVI.

[Dodson v. The State.]

FROM the Circuit Court of Calhoun.

Tried before the Hon. LEROY F. BOX.

The indictment in this case charged that the defendant, George Dodson, a freedman, "broke into and entered the dwelling-house of John Bush, with the intent to steal." On the trial, as appears from the bill of exceptions, said John Bush, also a freedman, testified on the part of the State, that on Tuesday morning, November 22d, 1887, before leaving his house, he counted his money, which was all in silver, and put it into a sack, which he placed in his trunk; that in the evening, when he returned home, he found that some one had entered the house by prizing up one of the planks of the floor, had opened his trunk, and had stolen the bag of money; and that the defendant had seen him, two or three days before, put the money in his trunk. The witness further testified: "On Thursday night next afterwards, witness, with Cal. Dobbins and one or two other negroes, arrested the defendant on suspicion, without a warrant, at the house of one Ned Robinson, a negro. No threats were made to defendant, nor inducements held out to get him to confess; but defendant then told witness that he had his money, and sent one Jim Blake to the house of his mother-in-law to get the ten dollars he had left with her the day before." Cal. Dobbins, another witness for the State, then testified in substance as follows: "Witness was with John Bush when defendant was arrested. They had no warrant for him, but were authorized by the constable of the beat to arrest any one whom they suspected of breaking into Bush's house. Defendant, when arrested, asked witness, what would be the best for him to do; and witness replied, that if he got the money, it would be best for him to tell all about it, but not to own to it if he did not get the money—that he ought not to own to it, if he was not guilty. On the next morning, defendant got away from witness and Ned Robinson, in whose custody he had been left that night; but they followed and caught him, and brought him back to Robinson's house. Defendant had on a pair of new shoes, and a new hat. Nothing was said to him by way of threats or inducements calculated to cause him to confess the crime, or the taking of the money. Witness was then asked, on cross-examination by defendant's counsel, what kind of shoes defendant had on; and answered, that they were fine shoes, and that defendant said they cost $1.75. The court then permitted the witness to be asked, on re-examination in chief, all that

was said by defendant in that conversation; and he answered, that the defendant, without being questioned, began the conversation, and was giving an account of what he had done with the money; said that he had Bush's money, and was telling them, while under arrest without a warrant, what he had done with it—that he had bought a pair of shoes for $1.75, a hat for $1.50, and a cloak, hat and pair of shoes for his wife; that he had gone to Talladega, to the circus, taking his wife with him, had bought some whiskey and something to eat while there, and had loaned some of the money to another negro. The defendant objected to this confession going to the jury as evidence, and moved to exclude it, on the ground that it was involuntary; which objection the court overruled, and the defendant excepted. The court had before this declined to admit the confession, and based its ruling in this instance on the fact that, on cross-examination of the witness, in answer to a question propounded by defendant's counsel, the witness had said that the defendant told him the shoes cost $1.75; the court holding that the State was entitled to call out the whole of the conversation, the defendant having called out a part of it. Witness further testified, that defendant had not said anything to him about the breaking of the house. Jim Blake testified, that he was present when the defendant was arrested; that the defendant sent him to the house of his mother-in-law, to get $10, which he said was part of the money he had left there; that he (witness) got the money, and turned it over to Cal. Dobbins, who turned it over to John Bush. And said Bush, being recalled, further testified, that he asked defendant where his little sack was containing his money; that defendant said he had it, and turned it over to witness; and said witness swore that the sack was the same which he put in his trunk with his money in it, but could not swear that the $10 turned over to him was the same money, though it was silver money of the same coinage."

"This being substantially all the evidence," the defendant requested the following charges in writing, duly excepting to the refusal of each: (1.) "The recent possession of stolen property, unexplained, is *prima facie* of guilt of the offense of larceny; but, even if the jury believe from the evidence that the defendant had the money of John Bush in his possession, they would not be warranted in convicting him of the burglary, unless the evidence convinces them, to the exclusion of every reasonable hypothesis other than that the defendant

[Dodson v. The State.]

broke and entered the dwelling-house with the intent to steal." (2.) "Unless the jury believe from the evidence, beyond all reasonable doubt, independently of any confession of the defendant as proved, that the house of John Bush was broken and entered by some one with the intent to steal; then they must acquit the defendant, even if they believe from the evidence, in connection with the defendant's confessions, that he is guilty as charged; and in determining this question, they must not capriciously convict the defendant, simply because they may believe he stole the money, or for any other reason.

THOS. N. McCLELLAN, Attorney-General, for the State, cited *Cary v. State*, 76 Ala. 78; *Young v. State*, 68 Ala. 569; *Neal v. State*, 63 Ala. 465; 3 Brickell's Digest, 285–6, §§ 547–8, 562.

STONE, C. J.—There is no proof in the present record that the accused was at any time in the hands of a mob, or that he was menaced by threatening surroundings. Hence we do not think the case falls within the principle declared in *Young v. State*, 68 Ala. 569, and *Redd v. State*, 69 Ala. 255. All that was said to the prisoner, to induce him to confess, was in response to his own request for advice; and the advice given was, that "if he was guilty, it would be best for him to tell all about it; but, if he did not get the money, not to own to it; that he ought not to own it, if he was not guilty." We think our former rulings require us to hold, that the confessions proved in this case were voluntarily made.—*Aaron v. State*, 37 Ala. 106; *King v. State*, 40 Ala. 314; *Kelly v. State*, 72 Ala. 244; 3 Brick. Dig. 286, §§ 562, 571.

We think, too, we might safely place our ruling on the ground on which the trial court admitted this testimony. The defendant himself proved a part of the conversation. This opened the door, and legalized the proof of the whole conversation relating to that subject.—3 Brickell's Digest, 285, §§ 547–8.

While the presumption that the accused was the burglar may not necessarily, and as matter of law, arise from the unexplained possession of the stolen property, soon after the burglarious theft was committed, it has been several times ruled in this court, that such possession is competent evidence to go to the jury on the trial for burglary.—*Crawford*

[Crocheron v. The State.]

*v. State*, 44 Ala. 45; *Murray v. State*, 48 Ala. 675; *Neal v. State*, 52 Ala. 465; Clark's Manual, § 889.   In *Neal's case*, it was said, such possession devolves on the possessor the *onus* of explaining how he acquired it.

The charges asked were rightly refused.   The first was calculated to confuse and mislead the jury, as to the *quantum* of proof necessary to authorize conviction.   It was not so framed as to be understood by the average juror. The second charge was clearly incorrect, in that it required the jury to discard from their consideration all evidence of defendant's confessions, in determining whether or not a burglary had been committed.

Affirmed.

