258 So.2d 743

Charles A. LEE, III

v.

STATE.

I Div. 87, I Div. 88.

Court of Criminal Appeals of Alabama.

Feb. 29, 1972.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

Peter J. Palughi, Mobile, for appellant.

**CATES, Judge.**

Indictments for two separate murders: judgments of guilty of murder in the first degree: both sentences, electrocution. We reverse.

I

According to the tendencies of the State's evidence, borne out mostly by confessions made by Lee, he encountered a trysting couple in the back seat of a Corvair on a May night. The place was an unpaved road on Dauphin Island.

If believed by the jury to the required degree (as the verdicts say it was) Lee killed the young man by stabbing him. Then Lee bound the girl's hands, put her in the trunk of his car and took her apparently away from the island. Somewhere near State Highway 188 he stabbed her and left her nude body about sixty feet from the paved road.

## II

We adjure against the expression "assignment of error" in a criminal brief because it might mislead members of the bar into taking the unnecessary step of making formal assignments of error. See Code 1940, T. 15, § 389.

Originally the writer of this opinion grumbled cholerically at the intricateness of the briefs. Counsel's duty to the client overrides a sixty two year old judge's irascibility. Forsan paene judici satis poena quod Deum habet ultorem.

## III

Appellant says that the jury separated. The record (74–75) bears out this contention. The State made no effort to show that some of the jurors who were not in the custody of the sworn bailiff had not talked or mingled with other persons. No mention is made of an agreement for the jury to separate or of any local or special law permitting such temporary dispersal.[1]

■■ We have three well-settled rules: *First,* during the trial of a felony[2] the jury is to be kept together; *Second,* if the jury does separate, that fact is, prima facie, error to reversal; and *Third,* to overcome this presumption of error, the State has the onus of establishing that the separated juror or jurors were not subject to influence or contacts which *might* have swayed them in reaching the verdict.

We use "might" to reflect the test of vitiating influence laid down in Roan v. State, 225 Ala. 428, 143 So. 454(26), i. e. "not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others * * *." See Oliver v. State, 232 Ala. 5, 166 So. 615.

In Mitchell v. State, 244 Ala. 503, 14 So.2d 132(3), Bouldin, J., speaks of these rules as:

"* * * safeguards against the hazards of outside contacts, which may, with no fault of the juror, so enter into his thinking as to influence his verdict unawares."

See also Tidwell v. State, 37 Ala.App. 228, 66 So.2d 845(5), (6).

---

1. As shown in Nelson v. State, 253 Ala. 246, 43 So.2d 892, Act No. 384, p. 358, July 8, 1943 [paraphased in Michie's 1958 Code as T. 30, § 97(1)] Mobile County is within the ambit of said Act No. 384. Sections 2 and 3 thereof are:

"Section 2. If the accused and his counsel and also the prosecuting attorney, in any prosecution for felony, whether capital or non-capital, consent thereto in open Court, the trial court in its discretion may permit the jury trying the case to separate during the pendency of the trial, whether the jury has retired or not. A separation so permitted shall not create a presumption of prejudice to the accused, but on the contrary it shall be primae facie presumed that the accused was not prejudiced by reason of the separation of the jury.

"Section 3. It shall be improper for the trial court to ask the accused, counsel for the accused, or the prosecuting attorney in the hearing of the jury whether or not he or they will consent to a separation of the jury pending the trial. It shall be improper for the accused or counsel for the accused, or the prosecuting attorney to state to the trial court in the hearing of the jury that he or they consent to a separation of the jury pending the trial."

The Alabama Supreme Court in Young v. State, 283 Ala. 676, 220 So.2d 843, held that Act No. 384 did not deny equal protection nor was it local legislation contravening §§ 106 and 110, Const.1901. Since the 1970 Census the statute now applies to Madison County as well as Jefferson, Mobile and Montgomery.

2. In a noncapital felony the trial judge, if apprised "beyond the hearing" of the jury of a consent (to the jury's separating) given by (a) the defendant personally, (b) his counsel, and (c) the District Attorney, he then has discretion to consider the advisability of the jury's being allowed to separate before they are discharged after verdict. Dictum by Stakely, J., in denying cert., Wright v. State, 262 Ala. 420, 79 So.2d 74. Such a consenual separation only shifts the onus of showing pernicious influence to defendant: the danger of jury tampering is not reduced. See Wiggins v. State, 39 Ala.App. 433, 104 So.2d 560.

■ In view of *Tidwell,* supra; Wright v. State, 38 Ala.App. 64, 79 So.2d 66, 70; Christison v. State, 39 Ala.App. 175, 96 So.2d 701; Golden v. State, 39 Ala.App. 361, 103 So.2d 52; and Smith v. State, 39 Ala.App. 501, 105 So.2d 662, we are impelled to reverse the judgment below. If Supreme Court Rule 45 were couched in terms so that we could weigh the evidence as though the jury separation had not occurred, our conclusion might be otherwise. However, the "no other reasonable jury" test is foreclosed by our Supreme Court in Rule 45.

■ Hence, the court below should have granted the appellant's motion for a mistrial.

## IV

The murders occurred in the early morning of Wednesday, May 28, 1969. Lee was arrested presumably on a non support charge sometime about 1 or 2 A.M. of Saturday, May 31.

On the following Monday, June 2, detectives in the Sheriff's office started interrogating him with respect to the murders. At that point he was given the *Miranda* warnings and signed at 9:25 A.M. a written waiver subjoined to a statement entitled "YOUR RIGHTS." (R. 108).

The interrogation was conducted in relays, i. e. Detectives Dees and Driggers began, then State Investigator Webber entered the questioning and on Tuesday a Prichard policeman, Chuck Wilkerson, also interviewed Lee on two occasions. In the latter interview Lee made inculpatory admissions and then later Tuesday night made a more complete confession of both crimes.

Each successive questioner asked Lee if he had had his rights explained to him and in each instance Lee affirmed that he had been apprised and that he waived having counsel.

First, appellant argues that his confession was improperly induced: (1) by an alleged statement by a policeman that the appellant did "not face the electric chair as a penalty"; and (2) by a claimed statement by a detective that he, the detective, would see that appellant would get help in the form of mental diagnosis or therapy or possibly both.

In Maull v. State, 95 Ala. 1, 11 So. 218, we find:

* * * "The testimony of the witness by whom the declarations were proven is as follows: 'I am sheriff of Lowndes county. A few days after defendant was put in jail I received a message from him to come to the jail; he wanted to see me. Soon afterwards I went to the jail, saw defendant, and asked him what he wanted with me. He replied he wanted to tell me about the killing of Mr. Maull. I asked him if he knew about the killing of Mr. Maull. He replied, "Yes, sir, I do;" and added, "I have sent for you to talk with you about my case." I then told him to go ahead, and tell me all about his case. He asked me if it would be the best for him to tell the truth about it. I replied that it was always best for him or any one else to tell the truth about anything. He then said: "I and this man [referring to another person in jail] have been talking about our cases, and I have sent for you to tell you about it." I then said, "If you are going to tell the straight truth, I will listen to it and want to hear it, and if you are not going to tell the truth I don't want to hear it." He hesitated two or three seconds, and I said to him to go ahead and tell me "all you know about the case." ' The declarations of defendant testified to by the witness were then made.

"The principle upon which these declarations were admitted cannot be distinguished from that applied to the facts in the case of Dotson v. State, 88 Ala. 210,

7 So. 259; Dodson v. State, 86 Ala. 60, 5 So. 485; Aaron v. State, 37 Ala. 106; Hornsby v. State, 94 Ala. 55, 58, 10 So. 522. In these cases the confessions of the defendant were held to be voluntary and admissible."

In brief, p. 118, appellant quotes Detective Driggers's urging Lee to tell "the truth about what happened that night on Dauphin Island * * *." To this was coupled Driggers's account of Lee's asking him if he could get help. Driggers apparently told Lee "that he will *if he was guilty of this crime* * * *." Italics added.

As expressed by Stone, J., in Aaron v. State, 37 Ala. 106 at 115, "* * * to suppose that the prisoner was influenced by the declaration to make the confession, is to concede his guilt; for, in no other contingency, was he advised to confess."

Electrocution, of course, provides an ultimate electric shock treatment. Yet we scarcely think that Driggers's prediction of "help" could be reasonably understood to embrace death as the release of woe.

As to the prospect of mental treatment in the penitentiary we are not advised by this record. Nor do we think it is a matter for judicial notice or knowledge.

More likely to us is the implantation of the suggested notion of pleading not guilty by reason of insanity. However, on the record before us the notion was coupled to the condition "if he was guilty." See *Aaron,* supra.

The other statement was, "I told him I didn't think he had to worry about the electric chair." This encapsulates not only Driggers's opinion, but also is implicit as to the possibility of electrocution even while rejecting the thought. We think it is common knowledge that a conviction of first degree murder in Alabama carries the alternative punishment of electrocution.

This opinion by the detective may have falsely removed a fear in Lee's mind. However, at R. 353 Driggers volunteered that his statement about no fear of the electric chair was "absolutely right, we don't have one here." Also he testified that Lee "inferred that I was going to put him in it * * *." Certainly no effort was made to emulate the inducement employed in Reeves v. State, 260 Ala. 66, 68 So.2d 14, rev'd 348 U.S. 891, 75 S.Ct. 214, 99 L.Ed. 700. The trial judge saw Driggers while he testified.

At the close of the voir dire hearing to ascertain the voluntariness of the confession we find a confusing record which appears as follows:

"THE COURT: Court will be in recess for ten minutes. Be ready for the Jury Mr. Palughi.

"MR. PALUGHI: Your Honor, yes sir, we're not pleading insanity.

"THE COURT: I understand you're not pleading insanity. The nature of the testimony they gave. I'm going to exclude their testimony and yours and the police record, your effort to go to the jail at ten thirty at night, I don't think they would be required to admit you.

"MR. PETER PALUGHI: But as to the situation of the psychiatrist, we've got a—

"THE COURT: I'm not going to admit their testimony, I don't think it's proper. I sustain the objection and exclude yours, and the police records.

"MR. PETER PALUGHI: You not going to give me a chance to argue it.

"THE COURT: Not before me. You can argue it before the Supreme Court if it—

"MR. DELANO PALUGHI: Let the record show that His Honor refused—

"THE COURT: No, let the record show that I heard this testimony that has been presented to the Court and I'll give you an opportunity to argue as long as you want to. Tell Mr. Brutkiewicz to come back in.

"(At this time argument was had on constitutional rights, by Mr. Palughi).

"THE COURT: Mr. Palughi, is this going to the question of whether or not I admit the confession?

"MR. PALUGHI: Yes sir, this goes to the question of whether you admit it on two grounds.

"THE COURT: I understand, but that's the sole purpose of the proposition now?

"MR. PALUGHI: Right now we're talking about the admissibility of the statement, or its voluntariness, also as to whether or not he made an understanding, intelligent waiver of rights.

"THE COURT: All right, I will admit that evidence before me, yours and all of it for the purpose of determining whether or not I will admit the confession and for that purpose of course only. I'm going to admit your testimony and the testimony of the two psychiatrists as addressed to me as the Judge. And I will also admit the hospital record for the purpose of being submitted to me on this issue, all of it.

"Court's Exhibit B (hospital records) admitted in evidence as Court's Exhibit B and it being impractical to reproduce same on the typewriter it is hereby certified to the Clerk for transmission with this transcript.

(Sgd.) Ora S. Nelson
Reporter

"THE COURT: I'm admitting the testimony for this purpose of whether or not the confessions are admissible, the alleged confessions, and I'm saying for this purpose, I'm admitting it, and for this purpose only at this time.

"THE COURT: Let the jury come back in."

We take the foregoing to be a finding that the confession as a matter of law was voluntary.

Some claim is made that Lee was held incommunicado in that he was denied the use of the telephone and that his family was not apprised of the basis for his detention until Wednesday, June 4, 1969, the day after he confessed. There was no proof made that Lee was brought before a committing magistrate.

The State's witnesses all stated that Lee did not ask to use the telephone. His brother came to the jail on Tuesday. He was in the building when Lee confessed.

In view of the need for a new trial we refrain from ruling pro or con as to the voluntariness of the confessions. We do adjure the lower court to make an in depth enquiry under the totality-of-the-circumstances doctrine. See Davis v. State, 44 Ala.App. 145, 204 So.2d 490.

V

Certain evidence was got by means of a search warrant particularly a "tie" like one used to bind the female victim's wrists. The affidavit described the affiant's informers merely as "reliable." Perhaps by the next trial the Supreme Court of the United States will have clarified United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723. See also Ex parte State ex rel. Attorney General, 286 Ala. 117, 237 So.2d 640.

VI

Complaint is made that the trial judge unduly hurried and harried defense counsel. A reading of the entire record reveals two sides to the coin. In view of venire de novo we trust that the next trial will be less drawn out.

VII

A newspaper story concerning the defendant was published directly above another article listing the names of the prospective venire for the week in which Lee· was tried. The conjunction of these separate items seems unintended. At all events.

we doubt that on new trial it will occur again.

## VIII

Appellant claims that the State "withheld material evidence from the court and jury * * *." However, no claim of prejudice is made nor is anything said that the evidence would have had a tendency to generate a reasonable doubt of appellant's guilt.

It is argued that the search produced a scabbard for a knife which was by description too large for the knife that made the wounds on the two victims. We cannot see that the size of a scabbard vis a vis that of a knife is analogous to a hand and glove match. Lee might have had another knife or have kept the lethal knife in an outsize scabbard. We fail to see the scabbard as shedding any light on the issues.

In nowise is there any showing to have brought this averment within the influence of Powell v. Wiman, 5 Cir., 287 F.2d 275, or Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215. In Husch v. State, 211 Ala. 274, 100 So. 321, we find:

"* * * Moreover, if the solicitor had had such a statement in his possession, defendant could have required its production by a rule of the court if he thought it was favorable to him."

## IX

That appellant had an aversion to the sight of blood, standing alone, was not a relevant circumstance in the instant case unless we were to stretch our conjecture to think that it *might* demonstrate a greater than normal intensity of passion to overcome the aversion and undertake killing by stabbing. Such speculation, if demonstrated by expert testimony, would seem to be unfavorable to the defendant.

■ Moreover, the record shows that the appellant's question was answered before the prosecutor objected. Even though the trial judge sustained the objection the answer was not taken from the jury's consideration. See McElroy, Law of Evidence in Alabama (2d ed.), § 426.01(3). Without a motion to exclude the answer and a ruling thereon no reviewable question has been reserved for our consideration.

## X

In his so called "assignment of error" 15 coupled with Proposition of Law 13, appellant argues for a separate trial on punishment after a verdict of guilt. This position has been rejected by our Supreme Court in Swain v. State, 285 Ala. 292, 231 So.2d 737, and Butler v. State, 285 Ala. 387, 232 So.2d 631.

The Supreme Court of the United States has held, May 3, 1971, that a unitary trial does not deny due process. Cramton v. Ohio, 402 U.S. 183, 91 S.Ct. 1454, 28 L. Ed.2d 711.

## XI

The prosecution sought to inject as a motive that the female victim bore a strong resemblance to a former wife of Lee. Lee had said that he had gone to Dauphin Island to think about his ex-wife Gwendolyn, whom he professed to still love.

Lee had been employed on construction projects at the Mobile General Infirmary, the same place at which his female victim worked. On this record deriving a motive to kill therefrom seems too far-fetched.

Hence, we see no need to further discuss appellant's argument of his Proposition of Law 14 particularly since we envisage little likelihood of violation of the rule of sequestering witnesses arising at another trial.

## XII

In view of a new trial we adjure a careful reading of Jackson v. State, 285 Ala. 564, 234 So.2d 579, particularly the following:

"Since *Witherspoon* [Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20

L.Ed.2d 776] and *Boulden* [Boulden v. Holman, Warden, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433] supra, it is clear that an affirmative answer to the general question that a juror is opposed to capital punishment, or has conscientious scruples against imposing such penalty, or has a fixed opinion against capital punishment is not a sufficient ground for challenge for cause. A juror giving such answer must be examined further to determine if his opposition is such that he would not inflict a death sentence *regardless of the evidence and instructions of the court as to the governing law.*" (Italics added).

## XIII

■ Complaint is made that the trial judge refused to allow defense counsel to interrogate jurors singly, i. e. separate and apart from the other members of the jury venire. The occasion was as to the impact of a newspaper article. This refusal was free from error. Seals v. State, 282 Ala. 586, 213 So.2d 645(18); Brown v. State, 45 Ala.App. 391, 231 So.2d 167; Anno. 73 A.L.R.2d 1187.

## XIV

■ The short answer to "assignment of error" 20 is that the order of proof is left to the discretion of the trial judge.

## XV

■ Defense counsel excepted to the part of the trial judge's general charge relating to alibi. This portion reads as follows:

"The Court further charges you, gentlemen of the Jury, that you will consider with caution the evidence of an alibi, because the Court recognizes, considers and realizes that such evidence is easily manufactured and that the evidence can be simulated to such an extent that if not true is presented to you as true and you will consider this evidence of an ali-

bi with caution and the Court states to you that once the alibi is established and you believe it and are not satisfied beyond a reasonable doubt of his guilt, considering the evidence of an alibi, then you would acquit him. If you believe from the evidence in this case that the alibi was not interposed in good faith and that the evidence to sustain it was simulated false or fraudulent, then this is a discrediting circumstance to which you may look in connection with all the other evidence to determine the guilt or innocence of this defendant."

In deference to the trial judge it should be pointed out that a charge of this import was held good in Provo v. State, 55 Ala. 222. But in Johnson v. State, 24 Ala.App. 291, 135 So. 592 (1931) the Court of Appeals, relying on Pate v. State, 94 Ala. 14, 10 So. 665, reversed for giving a charge virtually ipsissima verba to that sub-judice. *Johnson,* supra, was approved in Johnson v. State, 223 Ala. 332, 135 So. 592, and therein *Provo* was expressly disapproved.

Thereafter, in Canty v. State, 242 Ala. 589, 7 So.2d 292, we find the Supreme Court saying, inter alia:

"[The court] then instructed the jury in these words:

" 'Now, to this indictment, the defendant says, that he is not guilty. Further, he sets up as his defense, an alibi. Well, the law says this with reference to an alibi, that an alibi is easily manufactured, and should be taken with great caution. But, once, an alibi is established, it is as good a defense as is known to the law.'

"This instruction found support in Provo v. State, 55 Ala. 222. That case was expressly overruled in Johnson v. State, 223 Ala. 332, 135 So. 592, a decision by the full court, all the Justices concurring, and sustaining the decision of the Court of Appeals [24 Ala.App. 291, 135 So. 592] holding the giving of an instruction to like effect reversible error. For a full review of our cases, see Ragland v. State, 238 Ala. 587, 192

So. 498; Annotation, 124 A.L.R. 471 et seq.

"The instruction above set out is misleading, to say the least, in treating an alibi as a distinct and affirmative defense to be 'established' by the defendant. Such evidence goes to refute the evidence introduced by the State to identify the accused as the guilty man. The whole evidence is to be considered by the jury in the solution of that inquiry. The grave vice of such instruction is an invasion of the province of the jury; tends to disparage alibi evidence as matter of law, single it out to be viewed with distrust."

Then, the 1951 case of Philyaw v. City of Birmingham, 36 Ala.App. 112, 54 So.2d .619, the former Court of Appeals per Harwood, J., stated:

"At the request of the City the court gave to the jury the following written charge: 'The court charges the jury that they should consider the evidence of an alibi with great caution; that the law so considers it, for the reason that it was so easily manufactured; but that an alibi when once established to the satisfaction of the jury is as good as any other defense.'

"Instructions of practically the same tenor have been disapproved and held erroneous, for the reason that such charge is invasive of the province of the jury, and tends to single out alibi evidence and disparage it as a matter of law. The court therefore erred in giving this charge. Johnson v. State, 24 Ala.App. 291, 135 So. 592, certiorari denied 223 Ala. 332, 135 So. 592; Ragland v. State, 238 Ala. 587, 192 So. 498; Canty v. State, 242 Ala. 589, 7 So.2d 292."

See Anno. 146 A.L.R. 1377.

Accordingly, finding no later authority for the giving of such an instruction, we consider that reversible error is made to appear for misdirection of law which was invasive of the province of the jury.

The judgments of the court below are due to be reversed and the cause to be remanded for trials de novo.

Reversed and remanded.

PRICE, P. J., and ALMON and TYSON, JJ., concur.